UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-10581-PBS

YVETTE LOCKHART-BEMBERY, )
        Plaintiff )
VS. )
 )
TOWN OF WAYLAND POLICE )
DEPARTMENT, ROBERT IRVING )
In his capacity as CHIEF OF )
THE WAYLAND POLICE DEPARTMENT )
and DANIEL SAURO, )
        Defendants )

**RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AND SUPPORTING EXHIBITS OF THE DEFENDANTS, TOWN OF WAYLAND POLICE DEPARTMENT, ROBERT IRVING In his capacity as CHIEF OF THE WAYLAND POLICE DEPARTMENT and DANIEL SAURO**

1. The plaintiff suffered injuries on February 6, 2002. (See copy of the Plaintiff's Complaint, attached hereto as "Exhibit 1").

2. On February 6, 2002, Wayland Police Sergeant Daniel Sauro ("Sgt. Sauro") responded to a radio call concerning a woman slumped over in her automobile seat on Route 30 by Willowbrook Road in Wayland near the Natick line. (See copy of the Deposition of Sgt. Sauro, attached hereto as "Exhibit 2", pp. 53, 58).

3. In February 2002, the pertinent part of Route 30 was a two-lane traffic road (one lane in each direction) that did not have full breakdown lanes on each side. (Exhibit 2, p.54).

4. Just beyond the edge of the paved road where the plaintiff's car had stopped was an embankment. (See copy of the Deposition of Yvette

Lockhart-Bembery, attached hereto as "Exhibit 3", p. 93; see also Exhibit 2, p.58).

5. Prior to Sgt. Sauro's arrival, a motorist had stopped and allowed the plaintiff to use their cell phone to call AAA. (Exhibit 3, p.78).

6. AAA was on their way. (Exhibit 3, p.78).

7. Upon arrival, Sgt. Sauro noticed a woman sitting in a car that was nearly three quarters of the way into the road. (Exhibit 2, p.59).

8. Leaving his cruiser's lights activated, Sgt. Sauro then exited his vehicle and approached the plaintiff's car. (Exhibit 2, pp. 66-67).[1]

9. The plaintiff alleges that Sgt. Sauro told her to move the car off the road or it would be towed. (Exhibit 3, pp. 82, 89, 128).

10. The plaintiff alleges that Sgt. Sauro then walked back to his car to use his radio. (Exhibit 3, pp.128-129).

11. Acting under what the plaintiff described as a threat to tow her car, and after she already called AAA for what would presumably turn into a tow situation, the plaintiff then began pushing her car. (Exhibit 3, p. 132). "I just went into automatic drive and started to push." (Exhibit 3, p.132). While pushing, the plaintiff also attempted to steer the car. (Exhibit 3, p. 133). During this process, the plaintiff alleges that Sgt. Sauro did nothing and just stood next to his cruiser. (Exhibit 3, pp.133-138).

---

[1] The events that take place next are disputed by both sides, however, for the purpose of arguing summary judgment *only*, the defendants agree to the plaintiff's account of what Sgt. Sauro said to her that prompted her to move her car. Even assuming the plaintiff's description of the facts to be accurate, the plaintiff fails to make a showing sufficient to establish the existence of an element essential to her case, that is, the plaintiff fails to put forth facts that would preclude summary judgment in favor of the defendants.

2

12. When the plaintiff stopped pushing, the car stopped. (Exhibit 3, p.134). The plaintiff claims that Sgt. Sauro then said, "that is not where I said to put it, move it" back more. (Exhibit 3, pp.91, 134). "He just pointed." (Exhibit 3, pp. 90, 134).

13. The plaintiff then began pushing the car in the opposite direction. (Exhibit 3, pp.91, 134). The plaintiff heard Sgt. Sauro say, "I told you not to do that." (Exhibit 3, pp.92, 139).

14. Suddenly, the car gained momentum and started rolling down the embankment. (Exhibit 3, pp.93, 136).

15. The plaintiff then ran after her car, trying to physically pull the car to a stop. (Exhibit 3, p.93, 136). "Aside from being totally traumatized, that this car was picking up speed and I was unable to hold it back, unbeknownst to me that the car weighed how many thousands of pounds, thinking that I could move it." (Exhibit 3, p. 93). While chasing her car down the embankment, the plaintiff recalls Sgt. Sauro saying, "I told you not to do that." (Exhibit 3, p. 91-92, 139). Ignoring his apparent repeated warnings, the plaintiff continued running after her car. (Exhibit 3, p. 91-92, 139).

16. The plaintiff managed to get the driver's side door open, but slipped on the ice-covered grass before she could completely get herself into the car. (Exhibit 2, p. 93).

17. Now stuck in the door with her head facing down towards the ground, the car dragged the plaintiff approximately fifteen yards down the rest of the embankment. (Exhibit 3, p. 93, 95).

Respectfully submitted,

The Defendants, Town of Wayland, Daniel Sauro, and Robert Irving
By their attorneys,


   /s/ Jeremy I. Silverfine
Jeremy Silverfine, BBO# 542779
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100

Date: July 8, 2005