UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.  04-10581-PBS

| | |
|---|---|
| YVETTE LOCKHART-BEMBERY, | ) |
| Plaintiff | ) |
| VS. | ) |
| | ) |
| TOWN OF WAYLAND POLICE | ) |
| DEPARTMENT, ROBERT IRVING | ) |
| In his capacity as CHIEF OF | ) |
| THE WAYLAND POLICE DEPARTMENT | ) |
| and DANIEL SAURO, | ) |
| Defendants | ) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The defendants Town of Wayland (hereinafter "The Town"), Wayland Police Chief Robert Irving (hereinafter "Chief Irving"), and Wayland Police Sergeant Daniel Sauro (hereinafter "Sgt. Sauro") submit this memorandum of law in support of their motion for summary judgment on the plaintiff's claims against them. See Fed.R.Civ.P 56. As grounds, the defendants state that the plaintiff has not and cannot establish a claim for violation of federal or state civil rights and cannot establish a claim for intentional infliction of emotional distress against Chief Irving and Sgt. Sauro and, in any event, they are entitled to the defense of qualified immunity. Nor has the plaintiff established a claim for negligence against Sgt. Sauro.

## I. STATEMENT OF FACTS

This action is brought by the plaintiff, Yvette Lockhart-Bembery, against the Town of Wayland, Chief Irving, and Sgt. Sauro in connection with injuries suffered on

February 6, 2002. (See copy of the Plaintiff's Complaint, attached hereto as "Exhibit 1").

On February 6, 2002, Sgt. Sauro responded to a radio call concerning a woman slumped over in her automobile seat on Route 30 by Willowbrook Road in Wayland near the Natick line. (See copy of the Deposition of Sgt. Sauro, attached hereto as "Exhibit 2", pp. 53, 58). In February 2002, the pertinent part of Route 30 was a two-lane traffic road (one lane in each direction) that did not have full breakdown lanes on each side. (Exhibit 2, p.54). Just beyond the edge of the paved road where the plaintiff's car had stopped was an embankment. (See copy of the Deposition of Yvette Lockhart-Bembery, attached hereto as "Exhibit 3", p. 93; see also Exhibit 2, p.58). Prior to Sgt. Sauro's arrival, a motorist had stopped and allowed the plaintiff to use their cell phone to call AAA. (Exhibit 3, p.78). AAA was on their way. (Exhibit 3, p.78).

Upon arrival, Sgt. Sauro noticed a woman sitting in a car that was nearly three quarters of the way into the road. (Exhibit 2, p.59). Leaving his cruiser's lights activated, Sgt. Sauro then exited his vehicle and approached the plaintiff's car. (Exhibit 2, pp. 66-67).[1] The plaintiff alleges that Sgt. Sauro told her to move the car off the road or it would be towed. (Exhibit 3, pp. 82, 89, 128). The plaintiff alleges that Sgt. Sauro then walked back to his car to use his radio. (Exhibit 3, pp.128-129).

Acting under what the plaintiff described as a threat to tow her car, and after she already called AAA for what would presumably turn into a tow situation, the plaintiff

---

[1] The events that take place next are disputed by both sides, however, for the purpose of arguing summary judgment *only*, the defendants agree to the plaintiff's account of what Sgt. Sauro said to her that prompted her to move her car. Even assuming the plaintiff's description of the facts to be accurate, the plaintiff fails to make a showing sufficient to establish the existence of an element essential to her case, that is, the plaintiff fails to put forth facts that would preclude summary judgment in favor of the defendants.

2

then began pushing her car. (Exhibit 3, p. 132). "I just went into automatic drive and started to push." (Exhibit 3, p.132). While pushing, the plaintiff also attempted to steer the car. (Exhibit 3, p. 133). During this process, the plaintiff alleges that Sgt. Sauro did nothing and just stood next to his cruiser. (Exhibit 3, pp.133-138). When the plaintiff stopped pushing, the car stopped. (Exhibit 3, p.134). The plaintiff claims that Sgt. Sauro then said, "that is not where I said to put it, move it" back more. (Exhibit 3, pp.91, 134). "He just pointed." (Exhibit 3, pp. 90, 134). Now, the plaintiff began pushing the car in the opposite direction. (Exhibit 3, pp.91, 134). The plaintiff did hear Sgt. Sauro say, "I told you not to do that." (Exhibit 3, pp.92, 139). Suddenly, the car gained momentum and started rolling down the embankment. (Exhibit 3, pp.93, 136).

In a panic, the plaintiff ran after her car, trying to physically pull the car to a stop. (Exhibit 3, p.93, 136). "Aside from being totally traumatized, that this car was picking up speed and I was unable to hold it back, unbeknownst to me that the car weighed how many thousands of pounds, thinking that I could move it." (Exhibit 3, p. 93). While chasing her car down the embankment, the plaintiff recalls Sgt. Sauro saying, "I told you not to do that." (Exhibit 3, p. 91-92, 139). Ignoring his apparent repeated warnings, the plaintiff continued running after her car. (Exhibit 3, p. 91-92, 139). The plaintiff managed to get the driver's side door open, but slipped on the ice-covered grass before she could completely get herself into the car. (Exhibit 2, p. 93; see also copy of Sgt. Sauro's police report, attached hereto as "Exhibit 4"). Now stuck in the door with her head facing down towards the ground, the car dragged the plaintiff approximately fifteen yards down the rest of the embankment. (Exhibit 3, p. 93, 95).

3

Sgt. Sauro immediately came to the plaintiff's aid and asked if she was all right. (Exhibit 2, p. 79). The plaintiff complained of chest pains, which prompted Sgt. Sauro to call for an ambulance. (Exhibit 2, p. 79). Just as the ambulance arrived, so did the AAA wrecker. (Exhibit 2, p. 80). Shortly thereafter, a medical helicopter arrived and transported the plaintiff to Boston Medical Center. (Exhibit 3, p. 96). The plaintiff discharged herself from the hospital the next morning. (Exhibit 3, p. 96).

## II. ARGUMENT

### A. Summary Judgment Standard.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered against a party who, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). As discussed infra, summary judgment is appropriate here because "the pleadings, depositions, answers to interrogatories, and admissions on file" show that there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See Hinchey v. Nynex Corp., 144 F.3d 134, 140 (1st Cir. 1998).

### B.    The Defendants Chief Irving and Sgt. Sauro are entitled to Summary Judgment in their favor On the State and Federal Civil Rights counts of the complaint.

#### 1.    The Federal Civil Rights Claims.

The plaintiff alleges that the actions of Sgt. Sauro "constituted an unconstitutional seizure and detainment, constituted a violation of her due process rights, constituted a state created danger which caused harm to her, and otherwise constituted violations of the

4

her civil rights." (Exhibit 1, p. 4). More particularly, she claims that the defendants violated her civil rights when Sgt. Sauro said, "move the car, or it's going to be towed." (Exhibit 3, pp. 128).

To establish liability under 42 U.S.C. § 1983, the plaintiff must prove (1) that the defendants acted "under color of state law" and (2) that the defendants deprived her of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981).

Under the Mendenhall test, formulated by Justice Stewart in United States v. Mendenhall, 446 U.S. 544, 554, (1980), and adopted by the United States Supreme Court in later cases, see Michigan v. Chesternut, 486 U.S. 567, 573 (1988): "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Seizure also occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen such that he is not free to walk away. Terry v. Ohio, 392 U.S. 1, 16 (1968).

Here, the plaintiff alleges that Sgt. Sauro's statement, "move the car, or it's going to be towed," constituted some form of seizure or detainment.[2] Where the car was inoperable and where the plaintiff had already called for a tow truck, failure to follow Sgt. Sauro's order would not have resulted in anything but that which was already to happen - the car being towed. Furthermore, even if a reasonable person could interpret

---

[2] Once again, although Sgt. Sauro testified in his deposition that he did not "order" the plaintiff to physically move her car, and certainly did not stand idly by while she pushed the car, the defendants will submit to the plaintiff's account of the events for purposes of this motion *only*. For even if the plaintiff's version of the facts are true, her claims do not raise any genuine issue as to a material fact, and therefore, should not survive summary judgment.

Sgt. Sauro's statement as a threat to tow the car, a reasonable person could not have interpreted this statement to also mean that they were not free to leave. Given the absence of a belief that she was not free to leave, Sgt. Sauro did not restrain the plaintiff's liberty.

The plaintiff also asserts that Sgt. Sauro's order to move her car constituted a violation of the plaintiff's due process rights and subsequently constituted a state danger that caused her harm. Liability under the state-created danger doctrine is available only where, "[a] government employee, in the rare and exceptional case, affirmatively acts to increase the threat of harm of the claimant or affirmatively prevents the individual from receiving assistance." Frances-Colon v. Ramirez, 107 F.3d 62, 64 (1st Cir. 1997). Even where the government creates or seriously increases the harm, no violation of due process occurs unless the behavior "shocks the conscience" or is outrageous. Id., at 63. Also, it is worth noting that the harm referred to in state-created danger cases, is the type of harm that is inflicted by third parties.[3]

Here, the plaintiff asserts that Sgt. Sauro's order to "move the car, or else it will be towed," constituted a state-danger that resulted in her physical injuries. Following the plaintiff's line of reasoning, Sgt. Sauro's behavior was "conscious-shocking or outrageous" when he said the car would be towed if it was not moved. In making this claim, the plaintiff neglects to mention, that she had already called a tow truck.

---

[3] See generally, Canty v. Old Rochester Reg. Sch. Dist., 54 F.Supp 2d 66, 71 (D.Mass.1999) (finding plaintiff stated due process claim where school administrators, with knowledge that a teacher sexually assaulted his student, placed the student back in the same teacher's supervision); Schieber v. City of Philadelphia, 1999 WL 482310 (E.D. Pa. 1999) (court ruled officers' actions resulted in a state-created danger when in responding to a call about screams coming from a house, the officers knocked on the door and made no further inquiry after getting no response).

Furthermore, telling a person their broken-down car will be towed is not conscious-shocking or outrageous. At best (for the plaintiff), Sgt. Sauro exercised poor judgment when he did not take into account the remote possibility that the plaintiff might misinterpret his statement as an order to physically push and steer the plaintiff's vehicle to a more ideal place. In a recent Massachusetts District Court case, the Court opined that, "poor judgment... even if proven, does not rise to the level of a constitutional violation." Willhauck v. Town of Mansfield, 164 F. Supp.2d 127, 134 (2001). As unfortunate as the plaintiff's injuries were, they were injuries that were a result of her own actions, they were not as she claims, a result of a state-created danger.

### 2.   Massachusetts Civil Rights Claims.

In Count III of her complaint, the plaintiff alleges that Sgt. Sauro's actions, "constituted an unconstitutional seizure and detainment of the plaintiff, by use of threats, intimidation or coercion; constituted a state created danger and otherwise constituted a violation of the plaintiff's civil rights." (Exhibit 1, p.3). The plaintiff claims she is entitled to damages under M.G.L. c. 12, § 11I, the Massachusetts Civil Rights Act ("MCRA").

To establish a claim under MCRA, G.L. c. 12, § 11I, a plaintiff must prove (1) her exercise or enjoyment of her rights secured by the Constitution or the laws of either the United States or the Commonwealth; (2) have been subjected to interference, or attempted interference; and (3) that the interference or attempted interference was by "threats, intimidation or coercion." Bally v. Northeastern Univ., 403 Mass. 713, 717, 532 N.E.2d 49 (1989). These requirements under the MCRA are "coextensive with 42 U.S.C. §1983 ... except that the Federal statute requires State action whereas its State

counterpart does not." <u>Batchelder v. Allied Stores Corp.</u>, 393 Mass. 819, 822-23, 473 N.E. 2d 1128 (1985). Thus, the arguments set forth above regarding §1983 claim applies with equal force to the State Civil Rights claim, and summary judgment should enter in the defendants' favor.

Moreover, the MCRA also requires a showing of threats, intimidation or coercion. G.L. c. 12, §§ 11H and 11I. Threats, intimidation or coercion is an "essential element" of the plaintiff's claim. <u>See Layne v. Superintendent, Mass. Correctional Inst.</u>, 406 Mass. 156, 158, 546 N.E.2d 166 (1989). A threat is "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." <u>Planned Parenthood League of Mass., Inc. v. Blake</u>, 417 Mass. 467, 631 N.E.2d 985 (1994). Intimidation "involves putting in fear for the purpose of compelling or deterring conduct" while coercion is "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." <u>Id</u>.

Sgt. Sauro's actions were not threatening, intimidating, or coercive as they are defined by Massachusetts courts. Therefore, the defendants are entitled to summary judgment in their favor on this claim.

### 3.     Qualified Immunity

In federal civil rights actions, the defense of qualified immunity shields a government official performing discretionary functions from civil damages, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Febus-Rodriguez v. Betancourt-Lebron</u>, 14 F.3d 87, 91 (1st Cir. 1994). <u>See Buenrostro v. Collazo</u>, 973 F.2d 39, 42 (1st Cir. 1992), citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 806 (1982). On a motion for summary

judgment, "the relevant question is whether a reasonable official could have believed that his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." <u>Febus-Rodriguez</u>, 14 F.3d at 91.

In this case, Sgt. Sauro's order to move the car or else it would be towed, was not a violation of the plaintiff's constitutional rights. More particularly, Sgt. Sauro's actions did not amount to a seizure and detainment of the defendant, it did not violate her due process rights, it did not create a state danger, and did not otherwise constitute a violation of her civil rights. The <u>Harlow</u> standard requires that there be an objective analysis of the reasonableness of conduct in light of the facts actually known to the officer, and not consider the individual officer's subjective assessment of those facts. An objective analysis in this case reveals that Sgt. Sauro and the plaintiff knew that the AAA tow truck was already dispatched. Therefore, there was no real pressure for the plaintiff to move her car. This is consistent with Sgt. Sauro's testimony that he told the plaintiff to leave the car where it was on the side of the road. (Exhibit 2, p.75). In this instance, given the lack of an affirmative action induced by Sgt. Sauro, the plaintiff's constitutional rights were not violated.

Accordingly, summary judgment should enter in the defendants' favor on the federal civil rights claim.

**C.    The Defendants Chief Irving and Sgt. Sauro are entitled to Summary Judgment in their favor on the intentional infliction of emotional distress claim.**

The plaintiff alleges that the defendants' conduct "was outrageous beyond the bounds of human decency and beyond that which a civilized society would tolerate, and the defendants knew or should have known that said conduct would inflict severe

9

emotional distress upon the plaintiff." (Exhibit 1, p. 4). To sustain a claim of intentional infliction of emotional distress, a plaintiff must show (1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress. Agis v. Howard Johnson Co., 371 Mass. 140, 144-145, 355 N.E.2d 315 (1976). To be considered extreme and outrageous, the defendant's conduct must be "beyond all bounds of decency and ... utterly intolerable in a civilized community." Id. at 145, 355 N.E.2d 315, quoting Restatement (Second) of Torts § 46 comment d (1965). Liability cannot be founded upon mere insults, threats, or annoyances. Foley v. Polaroid Corp., 400 Mass. 82, 99, 508 N.E.2d 72 (1987).

The facts and circumstances of this case do not support all four elements of the emotional distress claim. Once applied, the facts do not even support the first two elements. The first element requires that Sgt. Sauro intended to cause distress or should have known his conduct would have caused distress. Explaining to a motorist that they will have to move their car off the highway or it will be towed does not constitute conduct that Sgt. Sauro should have known would cause severe emotional distress. This is especially true where the plaintiff already made a phone call to have her car towed. As to the second element, Sgt. Sauro's conduct was not beyond the bounds of decency and... utterly intolerable in a civilized community.[4] Where the facts do not support the first two

---

[4] See Ringuette v. City of Fall River, D.Mass. 888 F.Supp. 258 (1995) (even where police officers had improperly supervised drunken detainee, the court ruled that the officers' conduct was not outrageous nor did it constitute extreme conduct).

of the required four elements of emotional distress and where there are no genuine issues of material fact, summary judgment should be awarded in favor of the defendants.

### D. The Defendants, the Town of Wayland and Chief Irving, are entitled to Summary Judgment in their favor on the negligent supervision claim.

The plaintiff asserts a negligence claim against the Town of Wayland and Chief Irving under M.G.L. c. 258, § 2, alleging that they owed a duty of "reasonable care to the plaintiff and to all citizens who enter... Wayland to properly and reasonably train and supervise its police officers." (Exhibit 1, p. 5-6). More particularly, the plaintiff claims that the Town of Wayland and Chief Irving failed to adopt and implement reasonable procedures to prevent abuse of police authority. (Exhibit 1, p. 5-6). However, in order to hold the Town, as a public employer, liable under G.L. c. 258, § 2, the plaintiff must show that there was a duty owed to her, that there was a breach of such duty, that injury resulted from the breach and that a causal connection existed between the breach and the injury. See Dinsky v. Framingham, 386 Mass. 801, 804, 438 N.E.2d 51 (1982). The plaintiff has not and cannot make this showing.

Assuming for purposes of this motion that there was a duty owed the plaintiff, there is no evidence that the defendants breached this duty. The plaintiff alleges that the defendants breached their duty by failing to properly train and supervise defendant Sauro, which resulted in abuse of police authority. (Exhibit 1, p. 5-6). As discussed above, there is no evidence that such alleged conduct violated any regulation or procedure. Rather, the plaintiff's entire claim rests on Sgt. Sauro's statement to the defendant that she had to move or car or else it was going to be towed. Sgt. Sauro's conduct in this

instance falls far short of abusing his authority. Thus, contrary to the plaintiff's allegations, there was no breach of any duty.

It bears noting, that to the extent the plaintiff alleges that the Town was negligent in terms of its policies regarding (1) a failure to adopt and implement procedures to prevent abuse of police authority and (2) a failure to adopt and implement procedures for disciplining its officers, these claims are barred by the discretionary function exception to the Massachusetts Tort Claims Act, M.G.L.c. 258, § 10(b). In Whitney v. Worcester, 373 Mass. 208, 216-220, 366 N.E.2d 1210 (1977), the Massachusetts Supreme Judicial Court ruled that the discretionary function exception allows for governmental immunity where the issue involves "planning and policymaking," rather than, the execution of governmental policy or planning.[5] The Court expanded on this by adding, "when the conduct that caused injury has a high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability." Id., at 218. Discretionary

_____

[5] Although the Court's discussion in Whitney preceded the enactment of the Massachusetts Tort Claims Act in 1978, the opinion sets forth guiding principles for determining the scope of the discretionary function exception later stated in § 10(b). See A.L. v. Commonwealth, 402 Mass. 234, 245, 521 N.E. 2d 1017 (1988).

conduct is characterized by a high degree of discretion and judgment involved in
weighing alternatives and making choices with respect to public policy and planning.
Patrazza v. Commonwealth, 398 Mass. 464, 467, 497 N.E.2d 271 (1986). Here, the
Town had discretion in determining its policies regarding the training of its officers and
how to discipline their officers, therefore the discretionary function exception applies.
Accordingly, where the plaintiff has not and cannot make out a negligence claim against
it, the defendant Town of Wayland thus is entitled to summary judgment in its favor on
that claim.

      **E.**    **Sgt. Sauro is entitled to Summary Judgment in his favor on the
negligence claim.**

      The plaintiff alleges that she "suffered physical injuries and monetary and other
damages as a direct and proximate result of defendant Sauro's negligence." (Exhibit 1,
p.3). Under Massachusetts' law, the classic definition of negligence is "the failure of a
responsible person, either by omission or by action, to exercise that degree of care,
vigilance and forethought which, in the discharge of the duty then resting on him, the
person of ordinary caution and prudence ought to exercise under the particular
circumstances." Beaver v. Costin, 352 Mass. 624, 626 (1967). Stated succinctly,
negligence is the failure to exercise that degree of care, which a reasonable person would
exercise under like circumstances. Gilhooley v. Star Market Co., 400 Mass. 205, 207
(1987); Goldstein v. Gontarz, 364 Mass. 800, 804 (1974). Also, "negligent conduct is the
proximate cause of an injury ... [if] the injury to the plaintiff was a foreseeable result of
the defendant's negligent conduct." Kent v. Commonwealth, 437 Mass. 312, 320, 771
N.E.2d 770 (2002).

In the current case, the plaintiff cannot prevail on her negligence claim, because Sgt. Sauro's conduct constituted that of a reasonable officer under the circumstances and the plaintiff's injuries were not a foreseeable result of Sgt. Sauro's conduct. According to the plaintiff, her decision to start pushing the car, and then subsequently chase the car, were the proximate result of Sgt. Sauro's statement, "the car will have to be moved or it will be towed." (Exhibit 3, pp. 89, 128). A reasonable officer could not foresee that this statement would lead a person into believing that they must physically push their car out of the road. This is particularly true where the person had just called a tow truck. Given that these are the only facts that the plaintiff offers as evidence of negligence and that these facts are not in dispute (for purposes of this motion *only*), summary judgment should be granted in favor of the defendant Sgt. Sauro.

**III. Conclusion.**

For the reasons set forth hereinabove, summary judgment should enter in favor of the defendants on the plaintiff's complaint.

Respectfully submitted,

The Defendants, Town of Wayland, Daniel Sauro, and Robert Irving
By their attorneys,

___/s/ Jeremy I.Silverfine_____
Jeremy Silverfine, BBO# 542779
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100

Date: July 8, 2005