UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
*********************************************
YVETTE LOCKHART-BEMBERY,              *
                                      *
            Plaintiff                 *
                                      *
v.                                    *
                                      * C.A. NO. 04-10581-PBS
TOWN OF WAYLAND POLICE DEPARTMENT,    *
ROBERT IRVING, in his capacity as CHIEF OF *
THE WAYLAND POLICE DEPARTMENT and     *
DANIEL SAURO,                         *
                                      *
            Defendants                *
*********************************************
```

## OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This case involves a claim for injuries the plaintiff suffered on February 6, 2002. That morning her car had broken down on Rte 30 in Wayland, as it approached the Natick line. Ms. Lockhart Bembery, the plaintiff, pulled her car to the side of the road and called AAA from the cellphone of a good Samaritan passerby, who then called 911. These facts are not disputed.

Defendant Sauro responded to the call, decided the plaintiff's car was obstructing traffic and ordered the plaintiff to move her car. He refused to help her because, as he testified at his deposition, it was not safe to push a motor vehicle by hand, such that it is the defendant police department's policy that police officers "do not push motor vehicles by hand". [Sauro deposition, Exhibit A, hereto, pp. 69-70]

Attempting to comply with defendant Sauro's order, the plaintiff lost control of her car, which rolled down a steep embankment, pulling the plaintiff along, down the embankment, causing her serious injury. This is not disputed.

**ARGUMENT**

**I.  THE STANDARD FOR SUMMARY JUDGMENT REQUIRES DEFENDANTS TO ACCEPT THE FACTS IN THE LIGHT MOST FAVORABLE TO THE PLAINTIFF.**

Summary Judgment must be sparingly granted in civil rights cases. *Howard v. Topeka-Shawnee County Metropolitan Planning Commission*, 578 F. Supp. 534 at 536 (D.C. Kan. 1983), *Oaks v. City of Fairhope Alabama*, 515 F. Supp. 1004 at 1009 (D.C. Ala. 1981). The procedure is "drastic and should be applied with caution to the end that the litigants will have a trial on bona fide factual disputes." *Howard v. Topeka-Shawnee County Metropolitan Planning Commission*, 578 F. Supp. at 536.

Summary judgment may be entered only when there is no dispute as to material fact. The moving party has the burden of showing that they are entitled to judgment as a matter of law as there is no genuine issue as to material fact. *Bromley-Heath Modernization Committee v. BHA*, 459 F. 2d 1067 at 1071 (1st Cir. 1972).

The test for summary judgment is rigorous. *Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 934 (1st Cir.1987)  The court must look at the record in the light most favorable to the nonmoving party and "must indulge all inferences favorable to that party." *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir.1983) and *Staffier v. Sandoz Pharmaceuticals Corp.*, 888 F.Supp. 28 (D.Mass.,1995), citing *O'Connor v. Steeves*, 994 F.2d 905, at 907 (1st Cir.1993)  If a reasonable factfinder could resolve any material issue in favor of the non-moving party after reviewing the record in this generous light, then summary judgment must be denied. *Mack v. Great Atlantic and Pacific Tea Company*, 87 F.2d 179, 181 (1st Cir.1989)

Thus, the Court in, ruling on defendants' motion must reject the defendants' slanted statement of the facts. The Court should reject the defendants' assertion, based on hearsay not in evidence, that the plaintiff was "slumped over in her automobile" (although why any prudent police officer would not consider it reckless to order a woman who was reported to be slumped over in her car to get out and push the car is a reading of the facts that supports the plaintiff's claim of state created danger, discussed below).

The Court should also reject the defendants' claim that the plaintiff's car was blocking the road or defendant Sauro's claim that he needed to direct traffic that was backing up from the obstruction posed by the plaintiff's car. Rather, the Court must accept the plaintiff's testimony that her car was wholly off the roadway and that there was little if any traffic. Thus the Court should reject the defendants' attempted inference that it was necessary for defendant Sauro to have the plaintiff move her car.

More important, the Court should reject the defendants' contention that defendants' Sauro's order to "Move the car or it will be towed" was not an order but merely a "suggestion" that the plaintiff was not obliged to follow. Not only was the plaintiff's testimony that defendant Sauro ordered her to move her car: the reasonable inference is that when a police officer tells a civilian to do something, it is a command, and not a "suggestion" for which compliance is "optional". When defendant Sauro told the plaintiff to "Move the car or it will be towed", it was not a suggestion that the plaintiff was free to ignore.

The defendants also claim that defendant Sauro gave "repeated warnings" for the plaintiff "not to do that". They are not entitled to interpret defendant Sauro's single statement, <u>after</u> the plaintiff was pulled down the embankment in her effort to move her car as defendant Sauro had

ordered her, as "repeated warnings. Rather they must accept the statement as the plaintiff understood it: as a statement that he should not have made her to that, now that he realized the harm it caused.

"With respect to a motion for summary judgment, the burden is on the moving party to show that 'there is an absence of evidence to support the non-moving party's case.'" *FDIC v. Municipality of Ponce*, 904 F.2d 740, 742 (1st Cir. 1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986))  The defendants, failing to recognize the facts that support the plaintiff's case, have not done so, and so the Court should reject their motion without further consideration.

**II. WHERE THERE ARE FACTS THAT COULD LEAD A JURY TO FIND THAT DEFENDANT OFFICER SAURO'S "DELIBERATE INDIFFERENCE" AND "CALLOUS DISREGARD" FOR HER SAFETY PLACED THE PLAINTIFF IN A MORE DANGEROUS POSITION THAN THE ONE IN WHICH [HE] FOUND [HER]", PLAINTIFF HAS STATED A CLAIM THAT HER CIVIL RIGHTS WERE VIOLATED.**

Defendants misunderstand plaintiff's claim in arguing that defendant Sauro ordering the plaintiff to move her car "or else" did not constitute a Fourth Amendment seizure.  That is not plaintiff's claim.  As defendants note, at the bottom of page 4 of their memorandum in support of their motion for summary judgment, the plaintiff's allegation is that the actions of defendant Sauro "constituted a state created danger which caused harm to her, and otherwise violated her civil rights".[1]

In suggesting that the "harm" in state created danger cases "is the type of harm that is inflicted by third parties, the defendants further demonstrate their misunderstanding of the law

---

[1] In this regard, the defendants' argument that the order to move the car was not a seizure" is irrelevant, but the defendants' claim that the threat to have the car towed was not really a threat, as AAA was going to tow the car, anyway, is truly disingenuous.  Defendant Sauro's command "Move the car or I will have it towed" was clearly a threat to <u>impound</u> the car by towing it, not an offer to have it towed to the plaintiff's home or service station of her choice.

regarding state created danger. While the theory of state created danger has been applied – and often rejected – where it involves harm caused by third parties to whom the state may have exposed a plaintiff [see *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1988)], there is another line of cases that relies not on exposure to harm by third parties, but on a police officer's failure to protect an individual where it is that officer's conduct that has placed the individual in danger through his affirmative action. [See *Wood v Ostrander*, 879 F2d 583 (9th Cir., 1989)]

*Wood v Ostrander* involved facts similar to this case. The plaintiff, Linda Wood, a passenger in a car, was left to find her way home after the driver was arrested for drunk driving and the defendant police towed the car. When Plaintiff Wood asked the defendant officer how she was to get home, he ordered her out of the car without an answer to her question. Shortly thereafter, the plaintiff was raped by a driver that offered her a ride. The 9th Circuit, en banc, held in *Wood v Ostrander* that *Parratt v Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), cited by the defendants, does not require that conduct be deliberate or intentional to constitute a §1983 claim.

The *Wood v Ostrander* en banc held that *Parratt v Taylor* requires only (1) that the conduct complained of is under color of law, and (2) that it deprived the plaintiff of a federal constitutional or statutory right. Defendant Sauro's order, as a uniformed police officer, was clearly under color of law, just as Trooper Ostrander's arrest of the driver driving plaintiff Linda Wood.

Holding, at 588, that Linda Wood had a constitutional interest in her personal security under the Fourteenth Amendment, the *Wood v Ostrander* en banc decision then cites *Taylor v*

*Ledbetter*, 818 F2d 791 (11th Cir., 1987) for the proposition that "deliberate indifference to [the] victim's well-being is more than negligence and supports a §1983 claim".  In reaching this conclusion, the decision also cites *White v Rochford*, 592 F2d 381 (7th Cir., 1979) that "gross negligence or reckless disregard for the safety of others is cognizable" as a constitutional violation actionable under §1983.  A jury could well find that defendant Sauro's conduct, ordering the plaintiff to push a big Cadillac sedan along the top of a steep, ice covered embankment, something his department's policies prohibited him from doing because of the danger, demonstrated just such a reckless disregard for plaintiff Lockhart-Bmebery's safety as to support a §1983 claim.

In *White v Rochford*, the defendant police officer arrested the plaintiff's uncle, leaving the plaintiffs, two minor children, in their uncle's car.  Under exposure to the cold late on an October night, the children ventured across eight lanes of traffic and wandered the freeway in search of a phone.  Eventually, they called their mother, who, without a car, called the defendant police for assistance, which the defendant police refused.  The danger to the plaintiff children was not from a third party but the result of a government employee affirmatively acting in a way that increased the threat of harm to them, the standard set by the First Circuit, as cited by the defendants. [*Frances-Colon v Ramirez*, 107 F3d 62, 64 (1st Cir., 1997)]

The 7th Circuit, en banc, in finding a constitutional violation in *White v Rochford*, explained, at 383, "Although it would be impossible to catalogue and describe precisely each "liberty" interest protected by the Due Process Clause, it can hardly be doubted that chief among them is the right to some degree of bodily integrity."  The court then cites the Supreme Court, *Ingraham v Wright*, 430 U.S. 651, 97 S.Ct., 1401, 51 L.Ed.,2d 711 (1976), stating that "Among

the historic liberties so protected was a right to be free from, and to obtain judicial relief for unjustified intrusions on personal security."

"Unnecessarily endangering the innocent parties in a reckless disregard of their safety [internal cite omitted] constituted an unjustifiable intrusion on their federally protected rights." <u>White v Rochford</u>, supra, 388.[2]  This is precisely what defendant Sauro did to plaintiff Lockhart-Bembery.  He exposed her unnecessarily to a danger by ordering her to do something – push a stalled car on an icy slope – that was so dangerous that the defendant police department would not allow him to do the same thing.  "We [police officers] are not allowed to physically push a car," defendant Sauro explained.  "We didn't want men out on disability."  [Sauro deposition, Exhibit A, hereto, pp. 69-70]

According to defendant Sauro, the defendant departments' own directive barred police officers from pushing cars because of the risk of injury.  "The directive is we do not push – we the police officer, never gets out and pushes a car" because "Many other officers have been hurt, also.  That's why the directive came out not to hand push a car."  [Sauro deposition, Exhibit A, hereto, p. 70]   Yet, defendant Sauro was indifferent about forcing the petite Ms. Lockhart-Bembery to risk the very same danger from which his department's regulations protected him.

---

[2] Other state created danger cases include, for example, <u>Kneipp v Tedder</u>, F3d 1199 (3d Cir., 1996), which held that police could be held liable to a woman who suffered hypothermia after he stopped her, then let her walk home, alone and drunk on a cold night, <u>Munger v City of Glasgow Police Department</u>, 227 F3d 1082 (9th cir., 2000), where the defendant officers ejected Munger from a bar late on a cold night but would not let him drive his truck or re-enter the bar, and <u>Penilla v Huntington</u>, 115 F3d 707 (9th Cir., 1997), where the defendant officers, responding to a 911 call to find the plaintiff "in grave need of medical care", cancelled the request for paramedics, moved the plaintiff inside his apartment, locked it and left.  The Court, denying qualified immunity, held that the police had "clearly placed Penilla in a more dangerous position than the one in which they found him", the standard the Court should apply to defendant Sauro, here.

Ordering the plaintiff to engage in such a dangerous activity, like leaving children in a car or leaving a woman to find her way home, showed the "gross negligence or reckless disregard for the safety of others" that is cognizable as a constitutional violation actionable under §1983. If defendant Sauro did not care about the risk to the plaintiff because she was African-American or appeared to be a Muslim, the constitutional violation was even more egregious.

### III. **NEGLIGENCE**

As the defendants acknowledge [at p. 13 of their memorandum in support of summary judgment], "under Massachusetts law, the classic definition of negligence is 'the failure of a responsible person, either by omission or by action, to exercise that degree of care, vigilance and forethought which, in the discharge of the duty then resting on him, the person of ordinary caution and prudence ought to exercise under the particular circumstances.'" [citing *Beaver v Costin*, 352 Mass 624, 626 (1967) and other cases]

Certainly, if the defendant police department has deemed it unsafe for police officers to push any automobile in any circumstance, then it was not prudent or cautious for defendant Sauro to order the plaintiff, a petite woman, to push a heavy Cadillac on an icy roadside atop a steep embankment.

Defendants avoid addressing this by straining the facts, arguing that a reasonable officer would not anticipate that someone would obey the officers command. They write, at p. 14 of their memorandum, "A reasonable officer could not foresee that this statement would lead a person into believing that they must physically push their car out of the road", trying to argue that defendant Sauro's order was not a command. While a trier of fact could come to this conclusion,

most reasonable minds would conclude that when a police officer tells someone to do something, that is an order and the person is expected to do it.

Whether or not this is the most reasonable inference, plaintiff is entitled to this inference for purposes of summary judgment, where the defendants, as moving party, are obliged to pose all facts in the light most favorable to the plaintiff, something they clearly have failed to do. In any event, what defendant Sauro intended when he told the plaintiff to move her car or else and whether it was reasonable for the plaintiff to comply with what she understood was an order from a police officer are questions of fact for trial.[3]

It is for this reason that summary judgment is rarely appropriate in negligence cases. [see, 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure, § 2729 (2d ed. 1983), _Armstrong v. United States_, 756 F.2d 1407, 1409 (9th Cir.1985) _Marantz Co., Inc. v. Clarendon Industries, Inc._, 670 F.Supp. 1068, 4 UCC Rep.Serv.2d 1161, (D.Mass, 1987)] Juries have a unique competence in applying the "reasonable person" standard which ordinarily precludes summary judgment in negligence cases. _Hughes v. American Jawa, Inc._, 529 F.2d 21, 23 (8th Cir.1976); _Foley v. Matulewicz_, 17 Mass.App.Ct. 1004, 1005 (1984); see also _TSC Industries v. Northway, Inc._, 426 U.S. 438, 450 n. 12 (1976)

Accordingly, summary judgment is not appropriate in this case on the plaintiff's negligence claim. The defendant town is liable for the negligence of its employee, defendant Sauro, pursuant to M.G.L., c. 258.

---

[3] Defendants also contend, in this section of their memorandum, that the threat to have the car towed and impounded is the same as AAA towing the care to the plaintiff's home or service station. While this is a conceivable view of the facts, it certainly is not viewing the facts in the light most favorable to the plaintiff, as the defendants are required to do.

## IV.  THE DEFENDANTS TOWN OF WAYLAND AND CHIEF IRVING ARE NOT ENTITLED TO SUMMARY JUDGMENT WHERE THEIR FAILURE TO SUPERVISE THEIR EMPLOYEE WAS THE CAUSE OF THE PLAINTIFF'S INJURY.

The Supreme Court in <u>Canton v Harris</u>, 489 U.S. 378, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989) established a standard of deliberate indifference as the culpability standard necessary to establish liability under §1983 against a municipality based upon a claim that the municipality's lack of training or failure to supervise its police officers was a policy causing a violation of a constitutional right of a person subject to police action.

Here, the evidence is that defendant Sauro ordered the plaintiff to do something – push a car – that was so dangerous there was a department directive ordering officers not to.  As a result, the defendant was severely injured.  A complaint was made against defendant Sauro for what he did to endanger the plaintiff and cause her serious harm and nothing came of it, other than defendant Sauro "filing a report on it".  [Sauro deposition, p. 40]  There was no investigation, no inquiry to verify what happened and no effort whatsoever to hold defendant Sauro accountable.

This is the precisely the kind of "deliberate indifference" that gives rise to a §1983 claim against a municipality. " A municipality may be liable for an unconstitutional municipal custom if it is 'so well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet [do] nothing to end the practice.'" <u>Britton v. Maloney</u>, 901 F.Supp. 444, 450 (D.Mass. 1995), quoting <u>Bordanaro v. McLeod</u>, 871 F.2d 1151, 1156 (1st Cir.1989) cert. den. 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989).

"Unlike a 'policy', which comes into existence because of the top-down affirmative decision of a policymaker, a custom develops from the bottom-up.  Thus, the liability of the municipality for customary constitutional violations derives not from its creation of the custom,

but from its tolerance of or acquiescence in it." *Britton v. Maloney*, supra, 450  As explained by the Supreme Court in the context of sexual harassment, deliberate indifference is "an official decision . . . not to remedy the violation."  *Gebser v Lago Vista Ind. School District*, 118 S. Ct. 1989 (1998) That is precisely the response of the defendant town and chief.

The defendants cite *Whitney v. Worcester*, 373 Mass. 208, 366 N.E.2d 1210 (1977), for the absurd proposition that claims for violating the constitutionally mandated duty to train and supervise police officers are barred by the "discretionary function" exception to the Massachusetts Tort claims act.  *Whitney v. Worcester* involves a negligence claim against a school by a student injured when a door hit him.  The case did not involve negligent supervision, let alone negligent supervision of police officers who hold citizen's liberty and security in their command.  The citation is so inapplicable that it should raise the eyebrows of the court.

Where a jury could find that defendant Sauro felt that he could put the plaintiff or other citizens at risk for their physical safety by abusing his power as a police officer, and that he felt so emboldened because of the lack of any supervision, summary judgment is not appropriate on either the negiglent supervision claim under M.G.L., c. 258 or the failure to supervise *Monell* claim.

**V. DEFENDANT SAURO IS NOT ENTITLED TO QUALIFIED IMMUNITY WHERE THE PLAINTIFF'S RIGHT TO HER PERSONAL SECURITY WAS A WELL ESTABLISHED RIGHT AND DEFENDANT SAURO KNEW OF THE DANGER OF PUSHING A CAR ALONG ATOP A STEEP EMBANKMENT**

Qualified immunity is available only where the constitutional right violated by the defendant was not a "clearly established statutory or constitutional right" of which a reasonable person would have known. *Febus-Rodrriquez v Betancourt-Lebron*, 14 Fed 87, 91 (1st Cir.,

1994) "In order to be entitled to qualified immunity, the officers must show that their discretionary conduct did not violate any clearly established rights of which a reasonable person should have known. *Penilla v City of Huntington Park*, 115 F3d 707, 709 (9th Cir., 1997), citing *Harlow v Fitzgerald*, 457 U.S. 800, 102 S.Ct., 2727, 73 L.Ed.2d 396 (1982).

Plaintiff Lockhart-Bembery had a constitutional interest in her personal security, secured by the Fourteenth Amendment. This right was well established in case law in February, 2002. See, e.g. *Taylor v Ledbetter*, 818 F2d 791 (11th Cir., 1987) or the discussion and cases cited at 587-588 in *Wood v Ostrander*, 879 F2d 583 (9th Cir., 1989).

The plaintiff's constitutional right to her personal security, under the Fourteenth Amendment, entitled her not to be placed in a position of greater danger than that in which defendant Sauro found her. This right was well established in February, 2002, and thus the defendants are not entitled to qualified immunity. As the Court stated in denying qualified immunity in *Penilla v City of Huntington Park*, 115 F3d 707 (9th Cir., 1997), "when a state officer's conduct places a person in peril in deliberate indifference to their safety, that conduct creates a constitutional claim."

Defendant Sauro was well aware that pushing a car in any circumstances was dangerous enough that there was a police department directive that prohibited officers from pushing cars. The plaintiff's car was in a particularly precarious position, on an icy surface atop a steep embankment. This made the situation even more dangerous. He clearly placed the plaintiff in more dangerous position, in deliberate indifference to her constitutional right, and thus is not entitled to qualified immunity.

### VI. WHERE DEFENDANT SAURO KNEW THAT PUSHING ANY CAR WAS DANGEROUS ENOUGH THAT DEPARTMENT POLICY PROHIBITED OFFICERS FROM PUSHING CARS, COMMANDING THE AFRICAN-AMERICAL PLAINTIFF TO PUSH HER CAR ATOP A STEEP EMBANKMENT IS BASIS TO FIND INFLICTION OF EMOTIONAL DISTRESS

The defendants argue they should be granted summary judgment on the plaintiff's claim of infliction of emotional distress, claiming their conduct was not "outrageous beyond the bounds of human decency and beyond that which a civilized society would tolerate". A civilized society expects that police officers often take risks and place themselves in situations more dangerous than ordinary citizens. A civilized society also gives up certain freedom, agreeing to obey the orders of those it empowers to act as police officers.

A civilized society, however, expects if the officer should not order ordinary citizens to do things that are too dangerous for police officers, whom we expect to do dangerous things, to do themselves. As much as the defendants seek to deny this, that is what defendant Sauro did, ordering the plaintiff to do something he did not have to do because department policy deemed it too dangerous. A jury could find that this was "outrageous beyond the bounds of human decency and beyond that which a civilized society would tolerate", and thus the defendants are not entitled to summary judgment on the count for infliction of emotional distress.

### CONCLUSION

For the reasons stated herein, defendants' motion should be denied.

Additionally, to the extend that the defendants' motion was so improperly based on a strained reading of the facts that the defendants should have known was not a fair presentation of the facts in the light most favorable to the plaintiff, as non-moving party, the plaintiff asks the Court to determine whether the motion was, in whole or in part, frivolous, without basis and thus

intended to cause unnecessary delay or needless increase in the cost of litigation, and order appropriate sanctions upon such a finding.

                                                      Plaintiff by counsel,

Date: 8/5/05                                        /s/ Andrew M. Fischer
                                                            Andrew M. Fischer
                                                            JASON & FISCHER
                                                            47 Winter Street
                                                            Boston, MA 02108
                                                            (617) 423-7904
                                                            BB0# 167040
                                                            afischer@jasonandfischer.com

<u>CERTIFICATE OF SERVICE</u>

I, Andrew M. Fischer, hereby certify that on this date I served a copy of the above document on the defendants by mailing a copy, first class, postage prepaid to Jeremy Silverfine, Brody, Hardoon, Perkins & Kesten, LLP, One Exeter Plaza, Boston, MA 02116.


Date: 8/5/05                                                                          /s/ Andrew M. Fischer
                                                                         Andrew M. Fischer

lockhart\oppsj