UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
*******************************************
YVETTE LOCKHART-BEMBERY,              *
                                      *
        Plaintiff                     *
                                      *
                                      *
                                      *   C.A. NO. 04-10581-PBS
                                      *
TOWN OF WAYLAND POLICE DEPARTMENT,    *
ROBERT IRVING, in his capacity as CHIEF OF  *
THE WAYLAND POLICE DEPARTMENT and     *
DANIEL SAURO,                         *
                                      *
        Defendants                    *
*******************************************
```

### AFFIDAVIT OF YVETTE LOCKHART-BEMBERY
### IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Yvette Lockhart-Bembery, hereby attests as follows:

1. My name is Yvette Lockhart-Bembery and I am the plaintiff in this case. In that capacity I have personal knowledge of each of the facts attested to herein.

2. On February 6, 2002, my car, a 1988 Cadillac sedan, broke down on Rte 30 in Wayland, just after the Natick line. Although my alternator failed, disabling the engine, the car was still rolling downhill and I was able to pull the car off the road onto the grass just beyond a steep embankment.

3. As I was leaning over in the car, searching for my cell phone, a good Samaritan stopped, asked if I was OK, and called the Wayland Police. Another Samaritan stopped to offer use of his cell phone to call AAA.

4. While I was waiting for AAA, defendant Sauro pulled up in his police cruiser.

5. By now it was well past 9:00 a.m. and traffic was very light. My car was fully off the road and was not blocking traffic at all.

6. Defendant Sauro pulled his police cruiser a distance behind me. He never asked who I was or whether I was OK. He just walked past me as if I was invisible and ordered me to move my car. His exact words were "Move the car or it's going to be towed."

7. I tried to explain that the car would not start but he did not want to listen, saying that I could do it, I just would not have the power steering but that the car could be moved and had to be moved. Defendant Sauro's tone was loud, rude and arrogant, as he told me to put the car in neutral and push it back.

8. I was afraid that if I did not do as he commanded, the car would be impounded and taken before the AAA tow truck came and I would be left stranded. Besides, defendant Sauro was a police officer in uniform and I felt obliged to do as he said.

10. I am an African-American. I wear white and cover my head, and could feel that defendant Sauro was reacting to me based upon my race and the fact that I appeared to be a Muslim (even though I am not).

11. I tried to comply with defendant Sauro's command, but I am a small woman with chronic back pain and it was extremely difficult to push the heavy Cadillac sedan.

12. I pushed it back about a foot or two, afraid to push it more, for fear that it would roll down the steep embankment. When I got to where I thought he was pointing, he looked up from his police radio and yelled at me "I didn't say there. Move it! Move the car!"

13. I tried to move the car back to where he was pointing, but it was hard for me to move and steer a big heavy vehicle.

14. Defendant Sauro just stood there, looking at me while he talked on his police radio.

15. I tried to back the car up to where he wanted but the next thing I knew, the car was rolling down the embankment and I was running alongside it as the car pulled me along. I tried to let go, but couldn't.

16. Eventually, I fell, still holding onto the car.

17. As I was being dragged down the embankment by the car defendant Sauro had told me to push, I could hear defendant Sauro saying "I told you not to that."

18. In fact I did my best to do exactly what I thought defendant Sauro was telling me to do, both because I have learned to obey police officers and because I was afraid that if I did not do as he told, he would have my car towed and impounded.

19. This was very different from having my car towed by AAA to my gas station. If the car was impounded, I was afraid I would have been left stranded, miles from home on a cold winter's day, and would have to go through the cost and hassle of getting my car, still unrepaired, back from the police. Given defendant Sauro's rude, arrogant and presumptuous tone, I was very afraid that this was what would happen if I did not do as he ordered. To let go, but couldn't

15. Eventually, I fell, still holding onto the car.

16. As I was being dragged down the embankment by the car defendant Sauro had told me to push, I could hear defendant Sauro saying "I told you not to that."

17. In fact I did my best to do exactly what I thought defendant Sauro was telling me to do, both because I have learned to obey police officers and because I was afraid that if I did not do as he told, he would have my car towed and impounded.

18. This was very different from having my car towed by AAA to my gas station. If the car was impounded, I was afraid I would have been left stranded, miles from home on a cold

winter's day, and would have to go through the cost and hassle of getting my car, still unrepaired, back from the police. Given defendant Sauro's rude, arrogant and presumptuous tone, I was very afraid that this was what would happen if I did not do as he ordered.

**SIGNED UNDER PAIN AND PENALTY OF PERJURY THIS    4th    DAY OF AUGUST 2005**

/s/Yevette Lockhart-Bembery
Yvette Lockhart-Bembery