UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10581 NMG

YVETTE LOCKHART-BEMBERY,                    )
                     Plaintiff        )
VS.                                         )
                               )
TOWN OF WAYLAND POLICE DEPARTMENT           )
And                                         )
DANIEL SAURO                                )
                Defendants        )

## DEFENDANT DANIEL SAURO'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE. FOR A NEW TRIAL

Now comes the Defendant, Daniel Sauro (hereinafter "Sauro"), pursuant to Fed.R.Civ.P.50 (b), and moves that this Court enter judgment notwithstanding the verdict against him for intentionally or recklessly violating the civil rights of the plaintiff or, alternatively that this Court order a new trial on that claim.

**Introduction**

The plaintiff brought an action against Sauro and the Town of Wayland Police Department in connection with injuries she suffered on February 6, 2002. The plaintiff alleged that the actions of Sauro constituted an unconstitutional seizure and detainment, constituted a violation of her due process rights, constituted a state created danger, which caused harm to her, and otherwise constituted violations of her civil rights. The plaintiff also alleged that she suffered physical injuries and monetary and other damages as a direct and proximate result of Sauro's negligence. After trial, a jury returned a verdict on

February 2, 2006 against Sauro solely on the plaintiff's claim that Sauro intentionally or recklessly violated her civil rights. The jury initially awarded no damages ($0) and then returned, after further instruction from the Court, with an award one ($1) dollar.

## I. The Defendant Sauro is entitled to Judgment Notwithstanding The Verdict on the Violation of Civil Rights claim.

### A. Plaintiff failed to introduce sufficient evidence that any constitutionally protected right was violated or interfered with by the actions of Sauro.

The Defendant Sauro hereby requests this Court enter judgment notwithstanding the verdict on the violation of civil rights claim on the grounds that the plaintiff failed to introduce sufficient evidence that any constitutionally protected right was violated or interfered with by the actions of Sauro, as is required to establish a violation of 42 U.S.C. § 1983.

Section 1983 provides: "Every person who, under color or any statute, ordinance, regulation, custom, or usage of any State or Territory ... subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law..." 42 U.S.C. § 1983. In order to prevail in this case, plaintiff must first and foremost establish that her rights protected by the United States Constitution were violated. Specifically, the plaintiff here contended that her rights protected by the Fourth Amendment had been violated. However, the plaintiff failed to produce any evidence of any constitutional violations at trial.

The Fourth Amendment of the Constitution of the United States provides that "[t]he right of the people to be secure in their persons, houses, papers, and

effects against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized." U. S. Const. Amend. IV.  In any case brought under §1983 alleging a denial of the right to be free of illegal search and seizure, the first inquiry must be "whether the plaintiff has been deprived of a right 'secured by the constitution and laws' " of the United States.  Willhauck v. Halpin, 953 F.2d 689, 703 (1st Cir. 1991); Baker v. McCollan, 443 U.S. 137 (1979).  The question for the Court is whether the allegations of the complaint (and later at trial) described a "constitutional tort actionable under §1983."  Polk County v. Dodson, 454 U.S. 312, 326 (1981).

Not every tort allegedly committed by a public employee rises to the level of a constitutional violation.  Martinez v. California, 444 U.S. 277, 281 (1980); Parratt v. Taylor, 451 U.S. 527, 544 (1981); Baker v. McCollan, 443 U.S. 137, 146 (1979); Furtado v. Bishop, 604 F. 2d 80, 95 (1st Cir. 1979).  Section 1983 "imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."  Baker v. McCollan, 443 U.S. 137 (1979). Remedies for "the latter type of injury must be sought in state court under traditional tort-law principles...."  Id.  Violations of state tort law do not become constitutional violations "merely because the defendant is a state official."  Id.

In this case, the plaintiff failed to present any evidence that she was deprived of a right "secured by the constitution and laws" of the United States. The plaintiff testified that Sauro told her to push her vehicle out of a roadway or it would be towed.  Such actions, however, do not amount to an illegal search and/or seizure, nor any search and/or seizure whatsoever.  The plaintiff's

allegations may simply give rise to a state tort action (and the defendant submits that they do not in this case), but do not rise to the standard that is required to prove a federal claim under 42 U.S.C. § 1983.

"'Not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may the court conclude that a 'seizure' has occurred.'" Commonwealth v. Evans, 436 Mass. 369, 372, 764 N.E. 2d 841, 844 (2002). "The policeman plays a rather special role in our society; in addition to being an enforcer of the criminal law, he is a 'jack-of-all-emergencies'... expected to aid those in distress, combat actual hazards, prevent potential hazards from materializing, and provide an infinite variety of services to preserve and protect community safety." United States v. Rodriguez-Morales, 929 F.2d 780, 784-785 (1st Cir. 1991).

"Moreover, there are certain interactions between police officers and citizens that do not require judicial justification." Commonwealth v. Evans, 436 Mass. at 372. "Local police officers are charged with 'community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" Id. Courts have recognized that some of these functions may include allowing police officers to check on motorists parked in a rest area and allowing an officer to open the unlocked door of a vehicle parked in a break down lane to ascertain the motorist's need for assistance. Id., p. 372-373. Defendant Sauro's approach and subsequent interaction with the plaintiff's vehicle on Route 30 falls squarely under the officer's community caretaking function. Id., p. 373. Sauro's activation

of blue lights, after pulling up behind the plaintiff vehicle, did not change the nature of the encounter into a seizure. Id.

In the case at bar, the plaintiff was already stopped and parked in a busy road (broken down), a location normally associated with disabled vehicles. Id., p. 374. Thus, it was entirely logical and necessary for Sauro to ascertain whether the plaintiff needed assistance. Id. Sauro was performing a community caretaking function, not investigating suspected criminal activity triggering Fourth Amendment application. Id. "The imperatives of the fourth amendment are satisfied in connection with the performance of such noninvestigatory duties, including community caretaker tasks, so long as the procedure employed (and its implementation) is reasonable." United States v. Rodriguez-Morales, 929 F.2d at 785. "Whether the police activity is reasonable in any particular set of circumstances is almost invariably a factbound inquiry." Id., p. 783. Even if Sauro had stated that the plaintiff's car would be impounded (and the evidence at trial was that he did not say that), there are still no civil rights violations. The law provides that, so long as the police act reasonably in carrying out their community caretaking function, they can impound a vehicle even though probable cause to search it, or to arrest the driver, may be lacking. Id., at 784. Further, poor judgment even if proven, does not rise to the level of a constitutional violation. Willhauck v. Town of Mansfield, 164 F. Supp. 2d. 127, 134 (2001).

Sauro had a strong non-investigatory justification for attempting to remove the plaintiff's car from the busy roadway. The ensuing decision - not to leave an automobile on the shoulder of a busy road can hardly be faulted; had the officer simply abandoned it or had the car not been moved, the car not only

would have posed a safety threat, but also would have been easy prey for vandals. United States v. Rodriguez-Morales, 929 F.2d at 785. There is no requirement that an officer must select the least intrusive way of fulfilling his community caretaking responsibilities. Id., p. 786.

Simply stated, the plaintiff's evidence at trial failed to show a violation of any constitutional (or Fourth Amendment) right. The evidence does not support the verdict on the section 1983 claim. Based upon the above-stated grounds, the defendant requests entry of a judgment notwithstanding the verdict as a matter of law in his favor pursuant to Fed.R.Civ.P.50(b).

**B. Qualified Immunity**

The defendants requested that this Court rule as matter of law that Defendant Sauro was entitled to qualified immunity. The defendants' summary judgment motion and subsequent requests for entry of qualified immunity for Sauro should have been allowed. Sauro was entitled to qualified immunity because an objectively reasonably officer in his position could have believed that his conduct would not have violated the Fourth Amendment. Wilson v. City of Boston, 421 F. 3d 45, 47 (1st Cir. 2005).

The First Circuit identified a three-step process for evaluating qualified immunity claims: (1) whether the claimant has alleged the deprivation of an actual constitutional right; (2) whether the right was clearly established at the time of the alleged action or inaction; and (3) if both of these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right. Wilson v. City of Boston, 421 F. 3d at 52 (officer entitled to qualified immunity even where plaintiff mistakenly arrested and handcuffed for two

hours). On all parts of the three-step process Sauro is entitled to qualified immunity.

In the case at bar, as to the first prong the plaintiff failed to establish (or even allege) a deprivation of an actual constitutional right. The plaintiff was not stopped nor arrested. The plaintiff had broken down in her car on a busy road. At no time was the plaintiff "seized." As discussed above, Sauro's actions do not trigger Fourth Amendment implications. Commonwealth v. Evans, 436 Mass. 369, 764 N.E. 2d 841 (2002); United States v. Rodriguez-Morales, 929 F.2d 780 (1st Cir. 1991).

As to the second prong, the plaintiff has failed to show (at any time) any deprivation of an actual constitutional right. In fact, there was no right clearly established at the time of Sauro's actions (nor could there be) as the plaintiff was not stopped, arrested, nor seized. Asked another way, the salient question is whether the state of the law gave Sauro fair warning that his alleged treatment of the plaintiff was unconstitutional. Wilson v. City of Boston, 421 F. 3d at 56. It did not.

The final prong of the qualified immunity analysis is often the most difficult one for the plaintiff to prevail upon, whether an objectively reasonable official would have believed that the action taken violated clearly established constitutional right. Wilson v. City of Boston, 421 F. 3d at 57-58. Section 1983 actions frequently turn on this third prong of the qualified immunity inquiry, which channels the analysis from abstract principles to the specific facts of a given case. Wilson v. City of Boston, 421 F. 3d at 58. An objectively reasonable officer could not have believed that the actions taken by Sauro - having a

disabled car in a dangerous position on a busy road moved to a safer spot - violated clearly established constitutional rights.

Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. <u>Wilson v. City of Boston</u>, 421 F. 3d at 58. In this case Sauro is entitled to qualified immunity. Sauro is therefore entitled to judgment notwithstanding the verdict on this additional basis.

## II. **The Defendant's Request for a New Trial**

Sauro hereby requests a new trial based on errors in evidentiary rulings made during the course of the trial as well as errors in the jury instructions given by the Court. The specific errors are addressed below.

### A. **Jury Instructions**

The defendants properly objected to several of the jury instructions given by the Court pursuant to Rule 51(c) of the Federal Rules of Civil Procedure and objected to the omission of jury instructions proposed by the defendant as well. Such errors and omissions by the Court warrant a new trial on the plaintiff's civil rights claim.

The defendant objected to the Court's instructions as to what constitutes a constitutional violation pursuant to section 1983. Specifically, the Court instructed the jury, in relevant part, as follows:

**Instruction:**

1    In this case the plaintiff claims that Mr. Sauro

2    deprived her of rights guaranteed by the United States

3    Constitution. Specifically, the plaintiff alleges that Mr.

4    Sauro, while under color of authority of the state as an

5    officer of the Town of Wayland Police Department, deprived her

6    of rights secured to her by the Constitution of the United

7    States and/or the Massachusetts Constitution.

8    The plaintiff claims the actions of the Defendant Mr.

9    Sauro constituted: one, an unconstitutional -- well, a

10   violation of her right to due process of law is the first one;

11   and second, a state-created danger which caused harm to her or

12   other -- and otherwise constituted violations of her civil

13   rights.  Those are the two elements that she claims were

14   violated.  The plaintiff claims physical injuries, monetary

15   losses and other damages as a direct and proximate result of

16   Mr. Sauro's actions.

17   The claims before you are based on Section 1983 of

18   Title 42 of the United States Code, which provides a remedy for

19   individuals who have been deprived of their constitutional

20   rights by defendants acting under color of state law.

21   To establish such a civil rights claim against Mr.

22   Sauro under Section 1983, the plaintiff must prove, by a

23   preponderance of the evidence, each of the following three

24   elements:  first, that Mr. Sauro acted under color of state

25   law; second, that he deprived the plaintiff of her rights

16

1    secured by the Constitution; and third, that the acts were the

2    proximate cause of the injuries and damages sustained by the

3    plaintiff.

4    I'll now describe each of the three elements in

5    greater detail. The first element the plaintiff must prove by

6    a preponderance of the evidence is that Mr. Sauro was acting

7    under color of state law when he allegedly deprived her of her

8    constitutional rights. Mr. Sauro was acting under color of

9    state law if he was acting in his capacity as a police officer

10    of the Town of Wayland and not in some other capacity. And I

11    instruct you that, as a matter of law, Mr. Sauro was acting

12    under color of state law and that you must so find.

13    The second element of the plaintiff's claim against

14    Mr. Sauro is that he committed acts that violated the

15    plaintiff's constitutional rights. First, the plaintiff claims

16    that her Fourth Amendment rights were violated by Mr. Sauro.

17    The Fourth Amendment of the United States Constitution provides

18    "the right to the people to be secure in their persons, houses,

19    papers and effects against unreasonable searches and seizures

20    shall not be violated." To prove the second element of her

21    Section 1983 claim, the plaintiff must prove, by a

22    preponderance of the evidence, that Mr. Sauro violated her

23    right to be secure in her person by ordering her to push her

24    car in the circumstances that existed on February 6, 2002.

25    Second, the plaintiff claims that her Fourteenth

17

1    Amendment right to due process of law was violated. Among the

2    liberties protected by the Fourteenth Amendment of the United

3    States Constitution is the right to be free from and to obtain

4    judicial relief for unjustified intrusions on personal

5    security. If you find that the defendant, Mr. Sauro, ordered

6    the plaintiff to push her car farther off the road and that he

7    did so in violation of her right to be secure in her person,

8    then you may find that the defendant deprived the plaintiff of

9    her Fourteenth Amendment right of due process of law.

10    Finally, the plaintiff, Miss Lockhart-Bembery, claims

11    that Mr. Sauro's action constituted a state-created danger

12    which caused harm to her. A state-created danger exists where

13    the government's actions rendered a citizen more vulnerable to

14    harm. A citizen has a constitutional right to be protected

15    from such harm. A state-created danger occurs when an officer,

16    through an affirmative action, increases the threat of harm to

17    an individual. If you find that the Defendant Mr. Sauro, while

18    acting in his capacity as a Wayland police officer, took an

19    affirmative action that placed the plaintiff in a worse

20    position of danger than if he had not acted at all, then you

21    may find that Mr. Sauro's actions constituted a state-created

22    danger.

The Court's instructions did not describe what constitutes a constitutional

violation nor did it define what it means for a person to be secure in her person.

As a result, the instruction appears to suggest that an officer's request to move a

car can constitute a constitutional violation. But, as discussed earlier in this memorandum, the fact that Sauro may have requested (or even for argument's sake – "ordered" – although the plaintiff did not testify to this at trial) the plaintiff to attempt to move her disabled car off a busy road to a safer spot, absent something more, cannot give rise to a constitutional violation. Instructing the jury that if they found that Sauro ordered the plaintiff to push her car further off the road and that he did so in violation of her right to be secure does not state a constitutional violation.

Furthermore, the court's instruction on state-created danger was incomplete. This instruction does not describe what a constitutional violation is nor does it define what it means for a person to secure in her person. Not every negligent, or even willfully reckless, state action that renders a person more vulnerable to danger "take[s] on the added character of [a] violation[ ] of the federal Constitution." Monahan v. Dorchester Counseling Ctr., Inc., 961 F.2d 987, 993 (1st Cir.1992). More to the point in this case, the instruction tells the jury about state-created dangers without giving the benefit of the qualified immunity that reasonable police officers such as Sauro are entitled to under these circumstances. The "value of defense 'is effectively lost if a case is erroneously permitted to go to trial.'" Wilson v. City of Boston, 421 F. 3d at 52.

**Instruction**:

...But, for the moment,

3  let's assume that you've answered Question No. 1 yes and you're

4  now going to consider Question No. 2. And that question says

5  the following: "Did the Defendant Daniel Sauro intentionally

6   or recklessly violate the civil rights of the plaintiff, Yvette

7   Lockhart-Bembery, on February 6, 2002, through the use of

8   threats, intimidation or coercion?"  And then there's a place

9   for you to answer that question yes or no.  If you'll put the

10  form down, we'll talk about Question No. 2.

11  If you find in favor of Mr. Sauro on the plaintiff's

12  federal civil rights claim, that is, Question No. 1, you will

13  not consider the plaintiff's claim for the violation of her

14  rights under the Massachusetts Civil Rights Act, which is the

15  subject matter of Question No. 2.  However, if you find in

16  favor of the plaintiff on her federal civil rights claim, then

17  you must also consider whether Mr. Sauro violated her rights

18  under the Massachusetts Civil Rights Act.

19  The plaintiff alleges that Mr. Sauro violated her

20  rights under the Massachusetts General Laws, Chapter 12,

21  Sections 11H to 11I, the Massachusetts Civil Rights Act.  That

22  Act prevents any person from interfering by threats,

23  intimidation or coercion or from attempting to interfere by

24  threats, intimidation or coercion with the exercise or

25  enjoyment by any other person or persons of rights secured by

20

1   the Constitution or laws of the United States or by the

2   Constitution or laws of the Commonwealth of Massachusetts.

3   Because the Massachusetts Civil Rights Act contains

4    all of the elements of the federal law that I just explained,

5    that is, Section 1983, and one specific addition, the only

6    element of the state law that you need to consider is the

7    following:  whether the plaintiff has proven, by a

8    preponderance of the evidence, that the defendant interfered

9    with or attempted to interfere with her constitutional rights

10   by means of threats, intimidation or coercion.

11   A "threat," as that term is used in the Massachusetts

12   Civil Rights Act, involves the intentional exertion of pressure

13   to make another fearful or apprehensive of injury or harm.

14   "Intimidation" involves putting in fear for the purpose of

15   compelling or deterring conduct.  And "coercion" is the

16   application to another of either physical or moral force to

17   constrain him or her to do something against his or her will.

18   Not every violation of law is a violation of the Massachusetts

19   Civil Rights Act.  A direct violation of a person's rights, in

20   other words, a violation of a right that does not involve

21   threats, intimidation or coercion, does not violate the

22   Massachusetts Civil Rights Act.  Whether conduct is

23   threatening, intimidating or coercive is determined by an

24   objective standard, specifically, whether a reasonable person

25   would have been threatened, intimidated or coerced by the

21

1    defendant's conduct.

2    If you find that the defendant did or attempted to

3    interfere with the constitutional rights of the plaintiff by

4    means of threats, intimidation or coercion, you should return a

5    verdict for her on her Massachusetts Civil Rights claim. If,

6    on the other hand, you find that the defendant did not

7    interfere with the rights of the plaintiff or that the

8    interference was not accomplished by means of threats,

9    intimidation or coercion, as I've defined those terms, then you

10    should return a verdict for the Defendant Mr. Sauro.


The Court's instruction and the jury verdict are inconsistent. How is it that the jury found that Sauro violated the plaintiff's federal civil rights "intentionally and recklessly," if it did not find that Sauro threatened, coerced or intimidated the plaintiff. If you take the Court's Civil Rights instructions (see above), then the only way the jury could find that Sauro violated the plaintiff's civil rights would be that he told her to move or push the car off the road by threats (impoundment, tow), intimidation (color of law or uniform) or coercion (color of law or uniform). However, the jury did not find that Sauro "intentionally or recklessly violated the civil rights of the plaintiff" through the use of "threats, intimidation or coercion." Further, the jury did not find that Sauro's behavior was outrageous and the result of malicious motive or reckless indifference. In other words, Sauro at all times acted as a reasonable police officer would have under the circumstances.

**Instruction**:

19    Miss Lockhart-Bembery alleges that Mr. Sauro was

20    negligent in his actions toward her.  Negligence is the failure

21    to exercise that degree of care which a reasonable person would

22    exercise in the circumstances.  In order to prevail on a claim

23    of negligence, the plaintiff must prove, by a preponderance of

24    the evidence, that:  first, Mr. Sauro owed her a duty of care;

25    second, Mr. Sauro breached that duty of care by failing to

22

1    exercise reasonable care or, in other words, was negligent;

2    third, Miss Lockhart-Bembery suffered injuries; and fourth, the

3    negligence of Mr. Sauro was a proximate cause of Miss

4    Lockhart-Bembery's injuries.

The jury did not find any negligence on Sauro's part.  Again this is

inconsistent with the verdict by the jury of an "intentional or reckless violation"

of the civil rights of the plaintiff and points out the problem with instruction on

Civil Rights violations.  If Sauro owed the plaintiff no duty of care or if he did

not breach any duty of care owed to the plaintiff, how is that he could violate her

civil rights by requesting that she attempt to move her broken down vehicle to a

safer spot off a busy road.  Is this not the same thing as a state-created danger.

Telling the plaintiff to try and move her disabled car to a safer spot off of a busy

road during rush hour and then calling into dispatch to have the vehicle towed

(which it would have been anyway since the plaintiff had called AAA) does not

raise any constitutional violations.  In fact, as her counsel pointed out in his

closing argument, if the plaintiff was on medication or even crazy this would only buttress the defendants' argument that no reasonable officer under these circumstances would have known he was violating any constitutional right.

The defendants (through summary judgment and repeated requests before, during and after trial) specifically requested that the Court recognize that there were no constitutional violations.

### Side bar at end of case:

**Defendants' Counsel:**

8   I'll start off, you had made a statement about the

9   jury finding that Sauro ordered her to push the car. A), I

10   don't think that's in evidence; and B), I think the way the

11   sentences are structured, it's not an accurate statement as to

12   a constitutional violation. There is no seizure; there's no

13   arrest; there's no stop. There was no evidence that he ever

14   ordered her to push her car. That's a fact question, besides,

15   for the jury to find first.

16   THE COURT: I don't believe I instructed that that was

17   a fact. I said, if they found that she pushed her car, I

18   believe. We'll let the record speak for itself.

19   MR. SILVERFINE: Again, I'm -- for the defendants, I'm

20   -- I believe that's not what was stated.

The defendants continued to press the Court at the end of the case to recognize that Sauro was entitled to qualified immunity.

**Side bar**:

**Defendants' counsel:**

21    The other things are, you did not give what a

22    reasonable officer would have done in the circumstances. I

23    think, because of the way the Court -- I would renew my request

24    that this qualified immunity issue be decided by the Court, not

25    send it to the jury, because I don't believe any reasonable

34

1    officer in the circumstances of this case would have acted any

2    differently or could have acted other than as an objective,

3    reasonable officer.

4    THE COURT:  You're not objecting to the charge in that

5    sense, Mr. Silverfine; you're objecting to my not directing a

6    verdict?

7    MR. SILVERFINE:  According to the Appeals Court, I

8    haven't waived it, so I have to put it on the record.  I don't

9    want to waive any of those rights.  I don't believe they should

10    have gotten the federal constitutional or the state

11    constitutional --

23    For the record, in terms of jury instruction requests,

24    again, I would reiterate the following which are on my requests

25    for jury instructions.

26    I'll read them out for the record so

35

1    I'm protecting -- Instruction No. 9, which is, not every tort

2    committed by a public employee rises to the level of a

3    constitutional violation.

4    Number 10 of my requests, Section 1983 imposes

5    liability for violations protected by the Constitution, not for

6    violations of duties of care arising out of tort law.

7    In terms of qualified immunity, since your Honor -- I

8    know this is kind of odd, but since your Honor did not make a

9    ruling on the qualified immunity, I would ask you to read the

10    qualified immunity instructions, Nos. 11 through 19, that I

11    submitted before, which explain that an officer is entitled to

12    qualified immunity on the defenses of the plaintiff's claims,

13    which is what a reasonable officer would have done -- an

14    objective officer would have done in the circumstances,

15    especially with regards to all these claims that we have here.

16    For instance, particularly on No. 17, when a

17    substantive liability of qualified immunity is at issue, the

18    Supreme Court intended to surround the -- that the police would

19    make these on-the-spot choices in dangerous situations with a

20    fairly wide zone of protection in close cases.  The jury does

21    not automatically get to second-guess life-and-death decisions.

22    Again, for the record, this particular defendant is

23    entitled to immunity for a reasonable public official.

24    Defendant would not have been expected at the time to know his

25    conduct violated currently established federal law.

36

1    If a particular defendant that you are considering

2    convinces you by a preponderance of the evidence that his

3    conduct did not violate clearly established federal law, then

4    you must return a verdict for the defendant on that claim.

5    I'm just going to read the rest into the record, your

6    Honor, if I could, very briefly.  Again, I'm reading through my

7    suggested jury instruction, No. 14.  A police officer is

8    generally shielded from liability for civil damages as long as

9    their conduct does not violate clearly established statutory or

10   constitutional rights of which a reasonable person would have

11   known.

12   15, ...discretionary function has qualified immunity

13   from damages so long as a reasonable official in the

14   defendant's position could have believed his conduct was

15   lawful.

16   THE COURT:  You're going to have to slow down, Mr.

17   Silverfine.  She can't --

18   MR. SILVERFINE:  I'll be happy to.  I'm sorry.  In

19   light of clearly established law, information possessed by that

20   official at the time of the challenged conduct.

21   16, the principle of qualified immunity shields

22   government officials such as Sergeant Sauro who perform

23   discretionary function from civil liability for money damages

24   when their conduct does not violate clearly established

25   statutory authority or constitutional rights of which a

37

1   reasonable person would have known.

2   19, the doctrine of qualified immunity is intended to

3   give ample room for reasonable but mistaken judgment by police

4   officers.  This accommodation for reasonable error exists

5   because officials should not err always on the side of caution

6   because they fear being sued.  Thank you, your Honor.

7   THE COURT:  With respect to the first question that I

8   had instructed the jury about, her pushing the car, what I said

9   was, "To prove the second element of her Section 1983 claim,

10   the plaintiff must prove by a preponderance of the evidence

11   that Mr. Sauro violated her right to be secure in her person by

12   ordering her to push her car in the circumstances that existed

13   on February 6, 2002."

14   And then I later said, "If you find that the Defendant

15   Mr. Sauro ordered the plaintiff to push her car farther off the

16   road and that he did so in violation of her right to be secure

17   in her person, then you may find that the defendant deprived

18   the plaintiff of her Fourteenth Amendment right to due process

19   of law."

20   MR. SILVERFINE:  I think that's, A, not a

21   constitutional violation under the federal or state law because

22   there's many situations an officer can order someone to move

23   their car in a situation.  And I think just the fact that a

24   jury is asked, if they find that by itself, Sauro ordered her

25   to move her car, is not in any way a federal or Massachusetts

38

1   constitutional violation because there are many situations that

2   that would be absolutely perfectly viable, legal and

3   particularly in these facts. Just by -- even if you assume

4   those facts, that automatically puts him as a violation, and

5   that's not a violation of a constitutional -- federal or

6   Massachusetts constitutional violation. The fact is, even if

7   he did order it -- and we say he didn't -- even if he did,

8   that's not a violation of her constitutional rights.

A copy of the defendants' proposed jury instructions submitted to the Court are attached hereto as "Exhibit A".

## B. Improper reference to race

The defendant Sauro requests a new trial on the basis of the plaintiff's reference to race in her closing argument to the jury. There was absolutely no evidence produced at trial that race was a factor in this case. Yet, the plaintiff made reference to the fact that the plaintiff was African American in her closing argument in an attempt to taint the jury and to give credence to her specious arguments that her constitutional rights were violated.

There was absolutely no factual basis in any of the evidence derived in this case from which the plaintiff can point to that she was treated differently, by the defendants, because she is African American or because she "appeared" (the plaintiff's words in her pleadings only) to be a Muslim (no evidence of this

introduced at trial) because she was wearing some type of head covering. The defendants filed a *motion in limine* to prevent the plaintiff from suggesting that race or perceived religion played any role in this case. Clearly to allow otherwise would have greatly prejudiced the defendants. Said *motion in limine* was allowed by this Court and subsequently violated by the plaintiff in closing argument. A new trial is warranted as plaintiff's counsel improperly referenced race, in light of the fact that there was absolutely no evidence to support it.

## CONCLUSION

For all of the foregoing reasons, the defendant respectfully requests that this Honorable Court grant the Motion for Judgment Notwithstanding the Verdict or, in the alternative, grant the defendant's request for a new trial.

Respectfully submitted,
The Defendants,
By their attorneys,


_/s/ Jeremy Silverfine_
Jeremy Silverfine, BBO No. 542779
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100

Dated: February 16, 2006