UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| YVETTE LOCKHART-BEMBERY, | \* |
| | \* |
| Plaintiff | \* |
| | \* |
| v. | \* |
| | \*   C.A. NO. 04-10581-NMG |
| TOWN OF WAYLAND POLICE DEPARTMENT, | \* |
| ROBERT IRVING, in his capacity as CHIEF OF | \* |
| THE WAYLAND POLICE DEPARTMENT and | \* |
| DANIEL SAURO, | \* |
| | \* |
| Defendants | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR NEW TRIAL**

**I. INTRODUCTION**

Defendants, in their motion for judgment NOV or for a new trial, make the same fatal mistake as in their unsuccessful motion for summary judgment, the failure to recognize the well established constitutional right to be safe and secure in one's person.  This right gives rise to a constitutional violation for a state created danger, a violation that the defendants still fail to recognize.  In this case it was the danger in which defendant Sauro placed the plaintiff when he ordered her to move her car or else it would be impounded.

Having failed to recognize this established constitutional cause of action in their summary judgment motion, defendants' now make the same mistake in arguing, as the basis for seeking to set aside the verdict, there was insufficient evidence that any constitutionally protected right was violated.  The defendants simply fail to recognize or acknowledge that defendant Sauro placed the plaintiff in danger by ordering the plaintiff to do something he testified, both at deposition and at trial, was so dangerous that he would not do it himself.  In

fact, defendant Sauro ordered the plaintiff to do something so dangerous that there was a directive issued by the defendant Wayland Police Department that officers are not permitted push cars at all, let alone along a steep embankment slick with ice on a February day.

## II. ARGUMENT

### A. Viewing all facts in favor of the plaintiff, the defendants cannot meet the high standard of proof required by Rule 50(b) to set aside the verdict.

A jury verdict may only be set aside if "there is no legally sufficient basis" to support the jury's finding. Fed.R.Civ.P., Rule 50(a) "The yardstick . . . [for] refusal to grant a directed verdict is the same as that which we apply to the denial of a judgment n.o.v. [internal cites omitted] In conducting that exercise, [the trial judge] may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence. [internal cites omitted] Rather, [he] must examine the evidence and the inferences reasonably to be drawn therefrom in the light most favorable to the nonmovant. [internal cites omitted]" _Wagenmann v Adams_, 829 F2d 196 (1st Cir., 1987), quoting _Karelitz v. Damson Oil Corp._, 820 F.2d 529, 530 (1st Cir.1987).

In other words, the Trial Court must assume that the jury accepted the plaintiff's evidence to the full extent supported by fact and law. The Court, in ruling on a motion to set aside a verdict, must respect the jury's evaluation of the credibility of witnesses, the jury's resolution of conflicts in testimony and the jury's assessment of the weight of the evidence unless the jury's findings have no reasonable basis.

"In order to award a new trial [a Court] must find that the jury's verdict was **so clearly against the weight of the evidence as to constitute a manifest miscarriage of justice**." [emphasis added] *Wagenmann v Adams*, supra, citing *Valm v. Hercules Fish Products, Inc*., 701 F.2d 235, 237 (1st Cir.1983) (same); *Coffran v. Hitchcock Clinic, Inc*., 683 F.2d 5, 6 (1st Cir.), cert. denied, 459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982) and other cases. The same standard holds for issuing a judgment notwithstanding the verdict.

**B.  The defendants fail to recognize that the theory of a state created danger is well established at law.**

Defendants first and foremost argument is that "Plaintiff failed to introduce sufficient evidence that any constitutionally protected right was violated", and then spend pages 2-6 of their memorandum arguing that there was no arrest or other Fourth Amendment seizure.[1] In doing so, the defendants never address the principal theory of the plaintiff, that by ordering the plaintiff to push her heavy Cadillac along the steep embankment, defendant Sauro was ordering

---

[1]   Contrary to the defendants assertion, there was ample evidence to support a finding of a Fourth Amendment seizure. While the defendants are correct in asserting that "[n]ot all personal intercourse between policeman and citizens involves 'seizures' of persons" and "[n]ot every tort allegedly committed by a public employee rises to the level of a constitutional violation", the jury was also fully justified in finding that defendant Sauro's command that the plaintiff "move the car or else it will be impounded" was an order that the plaintiff was not free to ignore and that the plaintiff reasonably understood that she was not free to disobey the order.
   As the Court correctly noted, citing *Terry v Ohio*, 392 U.S. 1, 16 (1968) at p. 8 of its Memorandum and Order on Summary Judgment "Seizure also occurs when an officer . . . by show of authority has in some way restrained the liberty of a citizen such that he is not free to walk away". Defendants argue that Ms. Lockhart-Bembery could not have reasonably believed that she was not free to leave when Sargent Sauro told her to 'move her car, or it's going to be towed'. Nevertheless, the question of what is a reasonable belief under the circumstances of this case is subject to facts that are disputed and for a that reason should be left to the jury."
   Viewing the facts in a light most favorable to the plaintiff, as the Court must in considering a Rule 50(b) motion for new trial, the jury had a basis, as this Court has already instructed the defendants, to find a constitutional violation based on a Fourth Amendment seizure as well as a "state created danger" violation of the plaintiff's right to be secure in one's person.

her to do something that he knew to be dangerous, so dangerous that he would not do it himself and was protected from having to do so by the defendant town's directives.

The theory of a state created danger is established in Federal jurisprudence as a violation of both Fourth and Fourteenth Amendment rights "when a state officer's conduct places a person in peril in deliberate indifference to their safety". *Kennedy v Ridgefield*, 411 F.3d 1134 (9th Cir., 2005) "Gross negligence or reckless disregard for the safety of others is cognizable" as a constitutional violation actionable under §1983. *White v Rochford*, 592 F2d 381 (7th Cir., 1979)

"Although it would be impossible to catalogue and describe precisely each "liberty" interest protected by the Due Process Clause, it can hardly be doubted that chief among them is the right to some degree of bodily integrity." *White v Rochford*, which then cites the Supreme Court, *Ingraham v Wright*, 430 U.S. 651, 97 S.Ct., 1401, 51 L.Ed.,2d 711 (1976), that "Among the historic liberties so protected was a right to be free from, and to obtain judicial relief for unjustified intrusions on personal security."

Here the defendant Sauro assumed a duty of care for the plaintiff's safety when he came to the scene and took control, directing traffic and giving orders to the plaintiff, a duty defendant Sauro acknowledged in his own testimony. It is a common function for police officers to direct traffic around an accident scene or a broken down vehicle until a tow truck arrived to clear the scene. Police officers perform this function regularly for the safety and protection of the accident victims or the passengers or operators of the broken down vehicles. When they do so, the officers accept a duty of care to maintain the safety of the victims, passengers or operators, as defendant Sauro did for the plaintiff.

He then did what no police officer ever does.  In flagrant disregard for her safety, he ordered her to push the vehicle off the road.  The defendants, still arguing the facts[2] in their motion for new trial, fail to recognize that they must accept the jury's finding in the light most favorable to the prevailing plaintiff: these facts include the finding that defendant Sauro deliberately or recklessly placed the plaintiff in danger by ordering her to move her car ,

In *Kennedy v. Ridgefield*, the Court explained

> To find an officer liable under the 'state created danger' theory, a plaintiff must show that the officer's actions created or increased the danger facing him or her.  Second, the plaintiff must demonstrate that the state official acted with deliberate indifference to a known or obvious danger.

Here, there certainly was adequate evidence to support the jury's finding as to both elements.  There is no question that by ordering the plaintiff to push her vehicle, defendant Sauro created or increased the danger facing the plaintiff.  Nor is there any doubt that defendant Sauro "acted with deliberate indifference to a known or obvious danger".  He testified unabashedly that he would never push a car, as he ordered the plaintiff to do, explaining that it was "too dangerous", that he might be injured, and that there was a department directive prohibiting him from pushing cars, behavior deemed too dangerous for police officers.

Clearly the jury understood that defendant Sauro was acting with deliberate indifference because it refused to find defendant Sauro negligent, only finding that defendant Sauro did "intentionally or recklessly violate the civil rights of the plaintiff".  Where there was a factual basis to support the jury's finding – defendant Sauro's own explanation that he would not push

---

[2] See, for example, p. 12, where the defendants still argue that the "order" to move her car was not an order, claiming that defendant Sauro "may have requested" that the plaintiff move her car.

the Cadillac, as he ordered the plaintiff to do, because it was too dangerous – there is no reason or legal basis to set aside the verdict, as the jury's finding that defendant Sauro willfully or deliberately placed the plaintiff in danger is neither contrary to the evidence nor "a manifest miscarriage of justice."

**C. As this Court already ruled in its Order on Summary Judgment, the Plaintiff's right to be secure in her person was a well established Constitutional right**.

The defendants continue to refuse to recognize the plaintiff's well established constitutional right to be secure in her person, as this Court noted, in writing, at p. 11 of its Memorandum and Order on summary judgment that "Although the defendants persist in their contention that the plaintiff's rights were not violated, this court will not presume [as the defendants have] to substitute its judgment for that of the jury."

Qualified immunity is available only where the constitutional right violated by the defendant was not a "clearly established statutory or constitutional right" of which a reasonable person would have known. _Febus-Rodrriquez v Betancourt-Lebron_, 14 Fed 87, 91 (!st Cir., 1994)  Plaintiff Lockhart-Bembery had a constitutional interest in her personal security, secured by the Fourteenth Amendment.  This right was well established in case law in February, 2002.  See, e.g. _Taylor v Ledbetter_, 818 F2d 791 (11th Cir., 1987) or the discussion and cases cited at 587-588 in _Wood v Ostrander_, 879 F2d 583 (9th Cir., 1989)

The plaintiff's constitutional right to her personal security, under the Fourteenth Amendment, entitled her not to be placed in a position of greater danger than that in which

defendant Sauro found her.  This right was well established in February, 2002, as this Court noted in its Memorandum and Order on summary judgment.  Thus, as this Court has already ruled, the defendants are not entitled to qualified immunity.

"When a state officer's conduct places a person in peril in deliberate indifference to their safety, that conduct creates a constitutional claim." <u>Penilla v City of Huntington Park</u>, 115 F3d 707 (9th Cir., 1997),

Defendant Sauro was well aware that pushing a car in **any** circumstances was dangerous enough that there was a police department directive that prohibited officers from pushing cars.  In this case, the plaintiff's car was in a particularly precarious position, on an icy surface atop a steep embankment.  This made the situation even more dangerous.  He clearly placed the plaintiff in more dangerous position, in deliberate indifference to her constitutional right, and thus is not entitled to qualified immunity.

**D.  The Court's jury instructions properly set forth the constitutional violation claimed by the plaintiff and found by the jury.**

The defendants, in complaining about the Court's jury charge, first argue that "the court's instruction on state created danger was incomplete".  However, the defendants offer nothing that the Court should have added to the charge.  The defendants have no language that they can suggest should have been included in the charge because the charge was adequate, properly stating law for the jury.

The defendants' second complaint regarding the jury charge is that the verdict was inconsistent, in that the jury failed to find that defendant Sauro violated the Massachusetts State Civil Rights Act, thereby failing to find that he "threatened, coerced or intimidated the

defendant". Plaintiff agrees that this is inconsistent with the finding that defendant Sauro "intentionally or recklessly" violated her civil rights, as the order to move her car "or it will be impounded" constituted a threat, coercion or intimidation.

However, plaintiff understands, as the defendants do not, that the jury could have found that the order to move the car may not have constituted a threat, coercion or intimidation but was recklessly indifferent to the plaintiff's safety. As the parties are bound to accept any rational basis for the jury's verdict, then plaintiff accepts such an interpretation, as the defendants also must do.

Finally, the defendants contend that the jury's refusal to find the defendant negligent is inconsistent with its finding of "an intentional or reckless violation" of the plaintiff's civil rights. This is hardly the case. Rather, the jury is being quite explicit that it viewed the conduct of defendant Sauro as intentional and reckless, as well as deliberately indifferent to the plaintiff's safety. By refusing to find negligence, the jury is being unequivocal in its fact finding: defendant Sauro's disregard for the plaintiff's safety was not mere carelessness or negligence. It was a reckless and willful disregard for the plaintiff's safety.

**E. <u>There was no improper reference to the plaintiff's race</u>.**

The defendants' last grounds for their motion for a new trial is the erroneous contention that plaintiff improperly referred to her race in closing argument. The fact is that the plaintiff is African-American. The single acknowledgment of this in the closing did not violate the Court's order on defendants' motion in limine, which, quite properly, did not preclude the plaintiff from noting the facts. Nor did the single reference to the fact – undisputable – that the plaintiff was African-American taint or prejudice the jury.

In fact, given the extraordinary conduct of defendant Sauro in ordering the plaintiff to push her car, something he had never done in some thirty (30) years of directing traffic in many circumstances, one must wonder at his motivation in this case. The absence of any rational explanation for defendant Sauro's utter disregard for the plaintiff's safety and the callousness with which he was willing to have her do what he would not do himself leaves a rational mind searching for a reason for what the jury found to be a deliberate act by the defendant with perhaps no other conclusion than the act was motivated by the plaintiff's race and the fact that she appeared to be Muslim because of her headcovering.

## **CONCLUSION**

The defendants, in their judgment NOV or for a new trial, have failed to respect the jury's evaluation of the credibility of witnesses, the jury's resolution of conflicts in testimony and the jury's assessment of the weight of the evidence. Indeed the defendants continue to dispute the facts. This is not a basis for overturning a jury verdict.

Where the jury's verdict is not so clearly against the weight of the evidence as to constitute a manifest miscarriage of justice, there is no basis for setting it aside or ordering a new trial (except for the issue of damages, as set forth in plaintiff's motion for a new trial as to that issue).

Plaintiff by her counsel,

Date: March 13, 2006

/s/ Andrew M. Fischer
Andrew M. Fischer
JASON & FISCHER
47 Winter Street
Boston, MA 02108
(617) 423-7904
BB0# 167040
afischer@jasonandfischer.com

lockhart\oppmtnewtrial