**United States District Court**
**District of Massachusetts**

```
                                    )
YVETTE LOCKHART-BEMBERY,            )
                                    )
          Plaintiff,                )
                                    )        Civil Action No.
          v.                        )        04-10581-NMG
                                    )
TOWN OF WAYLAND POLICE              )
DEPARTMENT et al.,                  )
                                    )
          Defendants.               )
                                    )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The plaintiff, Yvette Lockhart-Bembery ("Lockhart-Bembery"),

brought suit alleging that defendant Daniel Sauro ("Sauro"), was

negligent and violated her federal and state civil rights when

she allegedly suffered injuries during an incident involving her

motor vehicle that occurred on February 6, 2002. After a trial

by jury, a verdict was returned on February 2, 2006, finding that

Sauro 1) was not negligent, 2) did not violate plaintiff's state

civil rights and 3) violated plaintiff's federal civil rights

pursuant to 42 U.S.C. § 1983. With respect to the § 1983

violation, the jury awarded Lockhart-Bembery nominal damages of

$1. Defendant now moves for judgment notwithstanding the verdict

on the § 1983 claim or, in the alternative, for a new trial on

that claim. Plaintiff moves to set aside the verdict or, in the

alternative, for a new trial on the issue of damages. Plaintiff

-1-

also moves for attorney's fees and expenses.

## I.   **Background**

### A.   **Facts**

On the morning of February 6, 2002, Lockhart-Bembery's car had broken down on Route 30 in Wayland near the Natick line.  The plaintiff pulled her car to the side of the road and called AAA from the cellphone of a passerby.  The passerby then called 911.

Defendant, Sergeant Daniel Sauro of the Wayland Police Department, responded to the call.  Sergeant Sauro decided the plaintiff's car was obstructing traffic and allegedly ordered the plaintiff to move her car off the road or it would be towed.  He refused to help her physically remove the vehicle because, as he testified at his deposition, it was not safe to push a motor vehicle by hand and it is the policy of the Wayland Police Department that police officers "do not push motor vehicles by hand".

Attempting to comply with Sergeant Sauro's order and under what she allegedly thought was a threat to have her car towed, the plaintiff began pushing her car manually.  She attempted to steer the car while pushing but lost control and her car rolled down a steep embankment dragging the plaintiff along and thereby causing her personal injury.

Sergeant Sauro then came to Lockhart-Bembery's aid.  She

-2-

complained of chest pain which prompted Sergeant Sauro to call for an ambulance. The plaintiff was transported by medical helicopter to Boston Medical Center. She discharged herself from the hospital the next morning.

### B.    Procedural History

The plaintiff originally filed suit in Middlesex Superior Court against the Town of Wayland Police Department, Robert Irving in his capacity as Chief of the Wayland Police Department, and Daniel Sauro. Ms. Lockhart-Bembery alleged: 1) negligence, 2) intentional infliction of emotional distress, 3) violation of 42 U.S.C. § 1983, 4) violation of the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11H or I ("MCRA") and 5) negligent supervision on the part of the municipal defendants. Defendants removed the case to this Court on March 24, 2004, and filed an answer which offered eight affirmative defenses including qualified immunity and failure to state a claim upon which relief can be granted.

The case was originally assigned to Judge Saris but was re-assigned to this session on July 12, 2004. Defendants moved for summary judgment on July 8, 2005, which plaintiff opposed. On December 7, 2005, this Court allowed defendants' motion with respect to plaintiff's claims of intentional infliction of emotional distress and negligent supervision but denied the motion in all other respects. Thus, the case proceeded to a

-3-

trial by jury only on those claims against defendant Sauro.[1]

Trial commenced on Monday, January 30, 2006, and continued for four days. At the close of evidence, plaintiff moved for a directed verdict and defendant moved for judgment as a matter of law, both of which motions were denied. Following closing arguments, the Court charged the jury and, after brief deliberations, the jury returned with a verdict in which they found that Sauro had "intentionally or recklessly violate[d] the rights" of the plaintiff on February 6, 2002, but found him not liable on any other count. With respect to the § 1983 violation, the jury awarded Lockhart-Bembery damages of "$0". After plaintiff's counsel raised an objection to the verdict, the Court further instructed the jury on damages and directed it to continue deliberations. A very short while later the jury returned with a verdict of damages of $1.

Both sides have filed post-judgment motions. Defendant moves for judgment notwithstanding the verdict or, in the alternative, for a new trial and plaintiff moves to set aside the verdict or, in the alternative, for a new trial on the issue of damages. Plaintiff also seeks attorney fees.

---

[1] The Town of Wayland Police Department remained a named party in the suit because, under Massachusetts law, it would have been required to indemnify Sauro in the event he had been found liable on the negligence claim.  See M.G.L. c. 258, § 13.

-4-

## II.    Renewed Motion for Judgment as a Matter of Law

### A.    Legal Standard

Pursuant to Fed. R. Civ. P. 50(b), a court may direct entry of judgment as a matter of law only "when after examining the evidence of record and drawing all reasonable inferences in favor of the nonmoving party, the record reveals no sufficient evidentiary basis for the verdict." Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 75 (1st Cir. 2001). In making such an evaluation, the court "may not weigh the evidence, undertake credibility determinations, or engage in differential factfinding." Id. The jury verdict must be allowed to stand "unless the evidence, taken in the light most favorable to the prevailing party, points unerringly to an opposite conclusion." Id.

### B.    Discussion

In support of his motion made pursuant to Rule 50(b), defendant Sauro submits that 1) plaintiff failed to introduce sufficient evidence that his actions violated or interfered with any constitutionally protected right and 2) he was entitled to qualified immunity.

#### 1.    Evidence of a Constitutionally Protected Right

Section 1983 of Title 42 of the United States Code provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights,

-5-

> privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at
> law....

Thus, in order to prevail on a § 1983 claim, a plaintiff must

prove, by a preponderance of the evidence, that 1) the defendant

acted under color of state law, 2) the defendant deprived the

plaintiff of her rights secured by the Constitution and 3) such

actions were the proximate cause of the plaintiff's injuries and

damages.  Sauro contends that Lockhart-Bembery did not prove the

second element and, therefore, the jury could not, as a matter of

law, have found him liable on the § 1983 claim.

In plaintiff's complaint, she alleged that Sauro's action

> constituted an unconstitutional seizure and detainment of
> the plaintiff, constituted a violation of the plaintiff's
> due process rights, constituted a state created danger which
> caused harm to the plaintiff and otherwise constituted
> violations of the plaintiff's civil rights....

When this Court denied defendant's motion for summary judgment as

to the § 1983 claim, it stated clearly that, of the

constitutional rights plaintiff cited as having been violated by

Sauro, a fact dispute existed with respect to each of them.

With respect to seizure, the Court cited the Supreme Court's

holding in United States v. Mendenhall, 446 U.S. 544 (1980), when

it stated that

> a person has been 'seized' within the meaning of the Fourth
> Amendment only if, in some view of all of the circumstances
> surrounding the incident, a reasonable person would have
> believed that he was not free to leave.

Id. at 554.  The Supreme Court went on to cite examples of

-6-

circumstances that might indicate a seizure, even where the person did not attempt to leave, including the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen or "the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Id. Given the plaintiff's contention that Sergeant Sauro arrived at the location of her immobilized vehicle and ordered her to move her vehicle off the roadway or have it towed, this Court concluded that a jury could, if it believed the plaintiff, reasonably find that Lockhart-Bembery had been seized in violation of her Fourth Amendment right to be secure in her person.

Furthermore, the evidence at trial continued to preserve such a possible claim. Specifically, plaintiff testified that, due to Sergeant Sauro's position as a law enforcement officer and his comments to her, she did not believe she had any option but to follow his "order" to do something she did not want to do and had never done before. Sufficient evidence was presented whereby the jury could have found that a reasonable person in plaintiff's position would not have believed she was free to leave or to disobey Sauro's order.

Defendant makes an elaborate argument about the "community caretaking" functions of the police, citing the decision of the First Circuit Court of Appeals in United States v. Rodriguez-

-7-

Morales, 929 F.2d 780 (1st Cir. 1991), in which that court
stated:

> The imperatives of the fourth amendment are satisfied in
> connection with the performance of such noninvestigatory
> duties, including community caretaker tasks, so long as the
> procedure employed (and its implementation) is reasonable.

Id. at 785. "Whether police activity is reasonable in any
particular set of circumstances is almost invariably a factbound
inquiry." Id. at 783. Thus, even if Sergeant Sauro arrived at
the scene as a "community caretaker", a critical fact question
remained as to whether the procedures he employed pursuant to
that function on February 6, 2002, were reasonable under the
Fourth Amendment. As a matter of law, the question of whether
plaintiff's Fourth Amendment rights had been violated by Sauro's
actions remained in dispute even after all the evidence had been
presented. Thus, it was appropriate to present that issue to the
jury.

Moreover, in arguing that plaintiff failed to introduce
sufficient evidence that his actions violated or interfered with
any constitutionally protected right, defendant ignores
plaintiff's principal legal theory with respect to her § 1983
claim, namely that Sauro violated her due process rights and
imposed upon her a state-created danger. The First Circuit has
stated that a substantive due process interest in bodily
integrity can support a personal injury claim under § 1983
against the provider of a governmental service where a

-8-

> government employee, in the rare and exceptional case,
> affirmatively acts to increase the threat of harm to the
> claimant....

Frances-Colon v. Ramirez, 107 F.3d 62, 64 (1st Cir. 1997).  See

also Kennedy v. Ridgefield, 439 F.3d 1055, 1061 and n.1 (9th Cir.

2006).

Here, there was adequate evidence offered at trial which, if

believed, would support the jury's finding of a due process

violation and a state-created danger.  Certainly, Sauro's alleged

order to Lockhart-Bembery to move her car along the embankment of

a busy, narrow state road on a cold winter morning could have

been found to create or increase the danger to plaintiff.

Thus, defendant's principal argument that plaintiff failed

to introduce sufficient evidence that his actions violated or

interfered with any constitutionally protected right is not

supported by the trial record.  Plaintiff offered sufficient

evidence for a jury to find (if they believed her) that her

Fourth and Fourteenth Amendment rights had been violated or

interfered with by defendant Sauro's actions.

### 2.   Qualified Immunity

Defendant also contends that, as a matter of law, he was

entitled to qualified immunity.  Under the doctrine of qualified

immunity:

> government officials performing discretionary functions
> generally are shielded from liability for civil damages
> insofar as their conduct does not violate clearly
> established statutory or constitutional rights of which a

-9-

reasonable person would have known.

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A defendant has the burden of establishing his entitlement to such immunity. DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 35 (1st Cir. 2001). A defendant is entitled to qualified immunity unless: 1) the plaintiff's allegations, if true, establish a constitutional violation, 2) the right was clearly established at the time of the alleged violation and 3) a similarly situated reasonable officer would have understood that the challenged action violated the constitutional right at issue. Rodriguez-Marin v. Rivera-Gonzales, 438 F.3d 72, 83 (1st Cir. 2006). For a plaintiff to defeat qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. Anderson v. Creighton, 483 U.S. 635, 640 (1987).

This Court was required to make a ruling on defendant Sauro's request for qualified immunity 1) when it considered his motion for summary judgment and 2) again at the close of the evidence at trial. At both junctures, the Court denied defendant's request because it concluded that all three disqualifiers could be established.

Now, Sauro submits that the first two prongs were not established because plaintiff's allegations do not implicate any violation of a constitutional right, let alone a clearly

-10-

established right. Defendant's argument has two fallacies. First, he proceeds to address only plaintiff's Fourth Amendment allegation to the exclusion of plaintiff's other viable constitutional theories. Second, he ignores the evidence presented to the jury which, if believed, was sufficient to establish that Sauro had violated plaintiff's constitutional rights.

Sauro also contends that a similarly situated reasonable officer would not have understood that the challenged action violated the constitutional right at issue. When it considered defendant's motion for summary judgment, this Court could not conclusively rule that a reasonable officer in Sauro's position would have believed his actions were lawful in light of clearly established law and the information he possessed at the time of the incident. The Court's opinion has not changed since the close of evidence. Taking plaintiff's allegations in the most favorable light, she claimed that she had been ordered by Sauro to push her car in a manner that defendant was himself prohibited from doing under department rules. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, Wilson v. City of Boston, 421 F.3d 45, 58 (1st Cir. 2005), but this Court concluded that it was not clear that Sauro's action on February 6, 2002, afforded him any immunity. Moreover, the jury's verdict finding him in violation of § 1983

-11-

supports the Court's conclusion.

## III. <u>Motions for a New Trial</u>

Both parties move for a new trial, although their motions are supported by entirely different legal theories.

### A.   Legal Standard

A new trial will be granted only where the verdict is "against the clear weight of the evidence." <u>Newell P.R. Ltd.</u> v. <u>Rubbermaid Inc.</u>, 20 F.3d 15, 22 (1st Cir. 1994). "A trial court should set aside a jury verdict only to prevent a miscarriage of justice." <u>Id.</u> "Mere disagreement with the verdict will not justify the granting of a new trial." <u>Id.</u>

### B.   Discussion

#### 1.   Defendant's Motion

In Sauro's motion, he criticizes the Court's jury instructions and the jury's verdict, which he contends is inconsistent.  First, he objects to the Court's instructions as to what constituted a constitutional violation under § 1983.  He argues that the instructions did not explain what would establish a constitutional violation and were incomplete, for example, in defining a state-created danger or what it means to be secure in one's person.

With respect to Sauro's latter point, the Court's instruction on state-created danger enunciated:

-12-

> Finally, the plaintiff, Ms. Lockhart-Bembery, claims that
> Mr. Sauro's action constituted a state-created danger which
> caused harm to her. A state-created danger exists where the
> government's actions rendered a citizen more vulnerable to
> harm. A citizen has a constitutional right to be protected
> from such harm. A state-created danger occurs when an
> officer, through an affirmative action, increases the threat
> of harm to an individual. If you find that the Defendant
> Mr. Sauro, while acting in his capacity as a Wayland police
> officer, took an affirmative action that placed the
> plaintiff in a worse position of danger than if he had not
> acted at all, then you may find that Mr. Sauro's actions
> constituted a state-created danger.

Defendant complains that the instruction does not describe what a

constitutional violation is nor does it define what it means to

be secure in one's person. With respect to the first point, the

Court's instruction is taken directly from the First Circuit's

statement in Frances-Colon which more than amply describes the

state-created danger theory of § 1983 liability. Defendant's

second point is irrelevant because the Court never discussed

personal security in relation to its instruction on state-created

danger.

Regarding defendant's criticism of the Court's instruction

as to the Fourth and Fourteenth Amendments, this Court recognizes

that its instructions were succinct. Nevertheless, it does not

agree with defendant's contention that its instructions were

incomplete or failed to explicate what would constitute a

violation of the rights provided by those amendments. Moreover,

defendant has offered nothing concrete that the Court should have

added to those particular instructions. As a matter of law,

-13-

Lockhart-Bembery presented evidence sufficient to allow the jury to consider her theories of liability with respect to the Fourth and Fourteenth Amendments. This Court's instructions concisely summarized plaintiff's claim and posed the appropriate factual question for the jury's reasoned consideration.

Next, Sauro turns to plaintiff's MCRA claim and argues that 1) the Court's instruction was faulty and 2) the jury's verdict is inconsistent. Sauro's first contention is ill-advised because the Court's instruction with respect to the MCRA claim was derived from black-letter Massachusetts law, as stated by the Supreme Judicial Court. See Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474 (1994).

Defendant's argument with respect to the inconsistency of the jury's verdict on the § 1983 and MCRA claims is more problematic. Sauro contends that the only way the jurors could have found that he intentionally or recklessly violated Lockhart-Bembery's rights under § 1983 was if they also found that he told plaintiff to move or push her car off the road by use of threats, intimidation or coercion. Thus, according to Sauro, the jury could not have found that he committed a § 1983 violation but had no MCRA liability.

The jury's verdict, while somewhat unorthodox, was not inconsistent. It could have found that Sauro's order to Lockhart-Bembery to move or push her car did not constitute a

-14-

threat, intimidation or coercion but was, nevertheless, recklessly indifferent to her safety. For example, that would have been the result had the jury's verdict with respect to § 1983 liability been based on the theory of a state-created danger.

Defendant also reiterates his post-charge objection at sidebar that the Court should have given his requested instruction on qualified immunity. His position is incorrect as a matter of law. The First Circuit has held that "[t]he ultimate question of qualified immunity should ordinarily be decided by the court." St. Hilaire v. City of Laconia, 71 F.3d 20, 24 (1st Cir. 1995). See also Wilson v. City of Boston, 421 F.3d 45, 53 (1st Cir. 2005). Although genuine disputes concerning material facts must be resolved by the jury, the question of whether the officer's conduct was objectively reasonable under a given set of facts is a question of law for the court. Id. at n.10. Here, defendant wanted the Court to read, and the jury to consider, his proposed instructions concerning objective reasonableness. Such a position is not in accord with this Court's understanding of First Circuit law.

As further grounds for a new trial, defendant contends that plaintiff's reference to race in her closing argument tainted the jury and was in violation of the Court's prior allowance of defendant's motion in limine to prevent plaintiff from suggesting

that race or perceived religion played any role in the incidents
from which this action arose.  Defendant argues that there was no
evidence produced at trial that race was a factor in this case
yet plaintiff made reference to the fact that she was black in
her closing argument to give credence to her claim that her
constitutional rights were violated.

The Court understands that it has broad discretion to deal
with supposed improprieties in the closing arguments.  Johnson v.
Nat'l Sea Prods., Ltd., 35 F.3d 626, 631 (1st Cir. 1994)(citing
Gonzalez-Marin v. Equitable Life Assurance Soc., 845 F.2d 1140,
1147-48 (1st Cir. 1988).  In assessing the effect of improper
conduct by counsel, the First Circuit examines the "totality of
the circumstances", which includes the nature of the comments,
their frequency, their possible relevancy to the real issues
before the jury, the manner in which the parties and the court
treated the comments, the strength of the case and the verdict
itself.  P.R. Aqueduct & Sewer Auth. v. Constructora Lluch, Inc.,
169 F.3d 68, 82 (1st Cir. 1999).

Here, plaintiff's counsel made a single, oblique reference
to his client's race in the closing argument.  Specifically, in
referring to the possible motives for why defendant Sauro
allegedly ordered plaintiff to move her car, he said:

> Now, Mr. Silverfine [defendant's counsel] says, well, why would
> he [Sauro] do that?  Well, maybe because she's black.
> Maybe because she's wearing a veil.  Maybe a lot of things.
> Why she did it doesn't matter.  Why he did it doesn't

-16-

matter.  The fact is he did it.  That isn't disputed.
The comment of plaintiff's counsel was inappropriate but his
subsequent statement that defendant's motivations were entirely
irrelevant to the jury's consideration was corrective.  Moreover,
counsel's reference to race was so trifling that it did not taint
or prejudice the jury with respect to the verdict and does not
warrant the ordering of a new trial.

## 2.  **Plaintiff's Motion**

Plaintiff's principal objection to the jury's verdict,
which, ironically, was also raised by defendant, is that the
jury's finding that Sauro was not negligent is inconsistent with
its finding that he violated plaintiff's civil rights under
§ 1983.  Specifically, both parties contend that, as a matter of
law, the jury could not have consistently found that Sauro
"intentionally or recklessly" violated Lockhart-Bembery's civil
rights but, at the same time, was not negligent toward her.[2]

In order for the plaintiff to prevail on a claim of
negligence, the Court instructed the jury that she

> must prove, by a preponderance of the evidence, that: first,
> Mr. Sauro owed her a duty of care; second, Mr. Sauro

---

[2] In her opposition to defendant's motion for judgment
notwithstanding the verdict, plaintiff argued that the jury's
verdicts on § 1983 and negligence were perfectly consistent but
now argues in her motion to set aside the verdict that such
verdicts are inconsistent.  The inconsistency seems to be in the
argument rather than the verdict but, to be scrupulously fair,
the Court will consider plaintiff's latest assertion on the
subject.

-17-

> breached that duty of care by failing to exercise reasonable
> care or, in other words, was negligent; third, Ms. Lockhart-
> Bembery suffered injuries; and fourth, the negligence of Mr.
> Sauro was a proximate cause of Ms. Lockhart-Bembery's
> injuries.

One of the fundamental differences between the test for
negligence and the test for liability under § 1983 is that the
former requires the jury to find that the defendant owed a duty
to the plaintiff while the latter does not.

In this case, it is entirely possible and consistent that,
in considering the negligence claim, the jury considered the
first prong of the negligence test and found that Sauro did not
owe Lockhart-Bembery a duty of care. If so, he could not be
found negligent but could, nonetheless, be found to have
"intentionally or recklessly" violated her civil rights. The
Supreme Court recognized that point when it held in Baker v.
McCollan, 443 U.S. 137 (1979): "Section 1983 imposes liability
for violations of rights protected by the Constitution, not for
violations of duties of care arising out of tort law." Id. at
146. See also Freeman v. City of Modesto, 1993 WL 147326, at *2
(9th Cir. 1993)(finding consistent the district court's decision
to grant directed verdict for officer defendants on negligence
claim while allowing § 1983 claim to go to the jury).

Plaintiff also objects to the jury's finding of nominal
damages on the § 1983 claim. According to Lockhart-Bembery, such
an award was contrary to the evidence presented at trial.

-18-

As background to this issue, the jury initially returned a verdict in which they found that Sauro had "intentionally or recklessly violate[d] the rights" of the plaintiff on February 6, 2002, but found no liability for Sauro on any other count and then awarded $0 in damages to plaintiff on the § 1983 claim. At sidebar, plaintiff's counsel objected to the verdict as inconsistent, specifically arguing that, as a matter of law, there can be no violation of one's constitutional rights if there is no damage. The Court agreed on the basis of the decision in Anderson ex rel. Dowd v. City of Boston, 375 F.3d 71, 95 (1st Cir. 2004), and gave the following instruction to the jury before asking it to continue its deliberations:

> Our problem stems from your affirmative answer to Question No. 1 and then an award of zero damages with respect to Question No. 3. If the Defendant Sauro intentionally or recklessly violated plaintiff's federal civil rights, then he must be found liable for some damage even if it was only nominal damages. If, on the other hand, he caused her absolutely no damage, then he didn't violate her federal civil rights.

> If you cannot determine damages with sufficient certainty but you find there was some damage, you may award nominal damages, which, for your purposes, would be one dollar.

> You are, therefore, instructed to return to the jury room with the verdict form and continue your deliberations and to reconsider your answers to all of the questions on the verdict form. And if you have any particular problem with any of those questions on the form, I will be here to try to answer them.

Following that instruction, the jury retired for further deliberations and returned with a verdict in which it awarded

-19-

plaintiff damages of $1 on her § 1983 claim. After the jury was discharged, plaintiff moved for 1) a mis-trial, 2) a new trial and 3) a new trial as to damages, all of which motions the Court denied.

Plaintiff's objection to the jury's award of nominal damages arises from the First Circuit's holding in Anderson. In that case, the First Circuit stated that where a jury finds a deprivation of a constitutional right that does not result in an actual injury giving rise to compensatory damages, nominal damages are the appropriate remedy. 375 F.3d at 95. Here, however, Lockhart-Bembery contends that Sauro's deprivation of her constitutional rights did result in actual injury, specifically some $6,000 of medical bills which were offered into evidence at trial.

Plaintiff's argument is myopic. The jury could have rationally concluded that most of her injuries would have occurred even if Sauro's conduct had met constitutional standards. See Butler v. Dowd, 979 F.2d 661, 669 (8th Cir. 1992)(en banc). See also Briggs v. Marshall, 93 F.3d 355, 361 (7th Cir. 1996); Ealy v. City of Dayton, 1996 WL 724368, at *6 (6th Cir. 1996). In fact, it is quite possible that the jury found that Sauro's unconstitutional actions were the proximate cause of only an indeterminate fraction of plaintiff's injuries while finding that she was responsible for most of them. For

-20-

example, Sauro testified that Lockhart-Bembery continued to push her car after he ordered her not to continue.

Moreover, aside from the hospital bills, the jury could have disbelieved plaintiff's testimony regarding the extent of her injuries. See, e.g., Butler, 979 F.2d at 669, 672. In fact, plaintiff's own daughter testified at trial that all her mother really wanted from defendant Sauro was an apology.

In summary, the jury's award is not unreasonable. Plaintiff may have, in fact, suffered serious injuries but, based on the evidence she offered, the jury was entitled, as a matter of law, to award her nominal damages.

## IV.  **Plaintiff's Motion for Attorney's Fees**

Pursuant to Fed. R. Civ. P. 54, and 42 U.S.C. § 1988, plaintiff moves for attorney's fees and costs in the amount of $48,546.50 and $2,466.27, respectively. Section 1988(b) provides that in federal civil rights actions, including those brought under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs". Section 1988 requires a two-part inquiry: 1) whether the plaintiff is a prevailing party and 2) if so, what constitutes a reasonable fee award. Boston's Children First v. City of Boston, 395 F.3d 10, 14 (1st Cir. 2005). The first inquiry has substantial implications because

-21-

"awards in favor of prevailing civil rights plaintiffs are
virtually obligatory." Gay Officers Action League v. Puerto
Rico, 247 F.3d 288, 293 (1st Cir. 2001). Nevertheless, a court
may properly deny a prevailing party's motion for attorney's fees
if the circumstances of the case would make a fee award unjust.
Farrar v. Hobby, 506 U.S. 103, 118 (1992)(O'Connor, J.,
concurring).

The Supreme Court has stated unequivocally that "a plaintiff
who wins nominal damages is a prevailing party under § 1988."
Farrar, 506 U.S. at 112. This is due to the fact that nominal
damages are a "material alteration of the legal relationship
between the parties" because a judgment for damages in any amount
modifies the defendant's behavior for the plaintiff's benefit by
forcing the defendant to pay an amount of money he would not
otherwise pay. Id. at 113. Thus, as a matter of law, Lockhart-
Bembery is the prevailing party under § 1988.

Despite the fact that the "technical" nature of a nominal
damages award has no effect on the prevailing party status, it
does affect the inquiry with respect to the reasonableness of the
fee awarded. Boston's Children First, 395 F.3d at 15. In
Farrar, the Supreme Court held that "the most critical factor in
determining the reasonableness of a fee award is the degree of
success obtained." 506 U.S. at 114 (citation and internal
quotation marks omitted). Other considerations include: 1) the

-22-

significance of the legal issue on which the plaintiff claims to have prevailed and 2) whether the success furthered a public purpose. Id. at 121-22 (O'Connor, J., concurring).

In this action, plaintiff's victory was decidedly trivial. Although plaintiff's complaint did not specify an exact amount of damages that she was seeking, she most assuredly expected more than $1 in damages on her § 1983 claim. Despite that general under-achievement, it is nevertheless significant that the jury found that defendant Sauro acted "intentionally or recklessly" to violate plaintiff's federal civil rights, especially when it found him not liable on any other claim against him.

That significance is tempered by the fact that plaintiff's victory is not very noteworthy. This litigation arose from what can only be described as a bizarre and aberrant incident on a roadside in Wayland, Massachusetts on a cold winter morning. Unlike a § 1983 case involving excessive use of force or deliberate indifference to serious medical needs, it is highly unlikely that there will be many future lawsuits with facts similar to the one at bar or that the jury's finding of liability against Sauro on the § 1983 claim will have a wide impact on the conduct of police officers.

Pursuant to the lodestar method, plaintiff contends that her particular request of $48,546.50 for fees and $2,466.27 for costs is reasonable. However, the First Circuit has held that when a

-23-

plaintiff prevails on some but not all of multiple claims,

> the court must filter out the time spent on unsuccessful
> claims and award the prevailing party fees related solely to
> time spent litigating the winning claim(s).

Gay Officers Action League, 247 F.3d at 298. Although attorney's
fees should not be awarded for time spent in litigating (or
preparing to litigate) unsuccessful, severable claims, they may
be awarded for time spent on unsuccessful claims if such claims
are interconnected to the successful claims, i.e., the claims
rest on the same facts or related legal theories. Hensley v.
Eckerhart, 461 U.S. 424, 435 (1983); Coutin v. Young & Rubicam
P.R., Inc., 124 F.3d 331, 339 (1st Cir. 1997). Here, with the
exception of the claims for negligent supervision which involve
different facts and unrelated legal theories, all of plaintiff's
claims stem from a common incident and are interconnected in such
a way that it is "difficult to divide the hours expended on a
claim-by-claim basis." Hensley, 461 U.S. at 435.

Plaintiff's counsel has not specified how much time he spent
litigating the interconnected claims in relation to the two
negligent supervision claims (neither of which survived
defendant's motion for summary judgment). In the interest of
fairness, the Court will reduce the requested fee by one-fifth to
reflect the time spent litigating those unsuccessful claims.

Of the claims that were tried to the jury, plaintiff
prevailed only on the § 1983 claim but was awarded just $1 in

-24-

damages.  Thus, the Court will reduce the remaining fee by two-thirds given the limited success plaintiff achieved, leaving plaintiff's final fee award at $12,946.

## ORDER

Defendant's Motion for Judgment Notwithstanding the Verdict or, In the Alternative, For a New Trial (Docket No. 72) is **DENIED.**  Plaintiff's Motion to Set Aside the Verdict or For a New Trial As To Damages(Docket No. 78) is **DENIED.**  Plaintiff's Motion for Attorney's Fees and Expenses (Docket No. 73) is **ALLOWED,** in part, and **DENIED,** in part.  Plaintiff is awarded attorney's fees of $12,946 and costs of $2,466.27.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated July *ll* , 2006

-25-